HOUSTON, Justice.
The parties are owners of certain subdivision lots in Star Point Subdivision in Marshall County, Alabama. Plaintiffs brought suit against defendants, alleging that the placement of several camper-type travel trailers upon the single lot owned by defendants as tenants in common violated a restrictive covenant applicable to all lots in Star Point Subdivision. After hearing ore tenus evidence, the trial court found that “any structure, capable of being used as a dwelling, which exceeds a single dwelling on each lot is a breach of the restrictive covenant” and enjoined defendants “from placing or maintaining any such structure on [Lot 41] other than a single private dwelling.” We affirm.
Star Point Subdivision consists of 53 lots, each of which has either water frontage or access to Guntersville Lake Reservoir. Each of the lots is subject to the following restrictive covenant:
“For the benefit of all purchasers of lots in the Star Point Subdivision, which embraces the land described above, as shown by map of record in plat book 2, page 119, in the office of the Judge of Probate of Marshall County, Alabama, and in order to foster the development and protect the value of said land for private residence purposes, the grantee (1) will use the land herein conveyed, for private residence purposes only; (2) will not construct or maintain or cause or suffer to be constructed or maintained on said lot any buildings other than a single dwelling costing not less than $1,000.00, with necessary and appurtenant outbuildings; (3) will construct for use with the dwelling either a septic tank or outdoor toilet in accordance with the standards of the state and county public health officials; (4) will not construct or maintain or cause or suffer to be constructed or maintained on said land any building located nearer than 25 feet from any side line of said land or from the center line of any road and not nearer than 5 feet from the margin of the right of way of said road.” (Emphasis added.)
All of the plaintiffs own lots adjacent to or near Lot 41.
Defendants, Milford E. Waldrop, Wade Morrow, John M. Pell, Jr., and Bobby Joe Pell, own Lot 41 of Star Point Subdivision as tenants in common. There is permanently affixed to Lot 41 a “mobile home” owned by Morrow. This structure is not objectionable to the plaintiffs. John Pell, Bobby Joe Pell, and Waldrop each own travel trailers or recreational trailers which they, from time to time, park on the premises and use. Waldrop’s trailer is 28 feet long, has four wheels, and sleeps five “comfortably.” It has a gas range and refrigerator and is equipped with plumbing. When on Lot 41, it rests on a concrete slab laid for that purpose. The other two trailers are 26 feet long, are equipped with plumbing, and have areas for sleeping and preparation of food. All of the trailers are hooked to water and electricity when on Lot 41. There are three septic tanks on Lot 41.
Defendants are married and each has a child or children. Not including adult children, the four families consist of 12 people.
During the year 1985, the three trailers were placed on Lot 41 in early May. They remained on the property until one was moved in September. The other two were removed about October or November. None of the defendants “lived” in his trailer fulltime. Occasionally, the defendants’ families spent nights on Lot 41, but the trailers were utilized more frequently during the daytime.
The undisputed evidence was that the utilization of Lot 41 by the defendants in the manner described diminished the value of the property owned by the plaintiffs.
The defendants frame the issue for review as follows: “Whether the definition of ‘dwelling’ contained in subdivision restrictive covenants should be extended to include camper-trailers so that even the tern- *327 porary placement of one or more camper-trailers on a subdivision lot with an existing residence would violate a covenant restricting each subdivision lot to a single dwelling?”
In Cox v. Walter, 348 So.2d 454, 455 (Ala.1977), this Court wrote:
“Where the language of the restriction is clear and unambiguous, it will, of course, be given its manifest meaning, but its construction will not be extended by implication or include anything not plainly prohibited and all doubts and ambiguities must be resolved against the party seeking enforcement. Bear v. Bernstein, 251 Ala. 230, 36 So.2d 483 (1948); Springdale Gayfer’s Store Co., Inc. v. D.H. Holmes Co., Ltd., 281 Ala. 267, 201 So.2d 855 (1967). Restrictions against the free use and enjoyment of property are not favored in law and such restrictions are to be strictly construed. Kennedy v. Henley, 293 Ala. 657, 309 So.2d 435 (1975).”
The plaintiffs in their brief make a most persuasive argument that perhaps this general rule should be revisited to make it more in tune with the times. The following is taken from the plaintiffs’ brief:
“The general rule which appears to have been adopted across the country is that restrictive covenants on the use of land are to be strictly construed. This is perhaps what one might expect to emerge from a frontier society where land was plentiful and where its development for any purpose was considered to be in the best interest of the community and country. It is suggested that our society has progressed to the stage and our land has been developed until there is now at least an equal countervailing need for people to be protected in their investment. Particularly is this true in the case of their homes where their investment often represents their lifetime savings. The statement of the Court in Brandon v. Price, 314 S.W.2d 521, 523 (Ky.1958), is pertinent:
“ ‘Under the modern view, building restrictions are regarded more as a protection to the property owner and the public rather than as a restriction on the use of the property, and the old time doctrine of strict construction no longer applies.’
“Indeed, we suggest that there is really no need for a strict or liberal rule of construction. The lode-star rule for construing all agreements is sufficient. In White v. Harrison, 202 Ala. 623, 81 So. 565 (1919), the very learned Justice Sayre stated: ‘Covenants will, in general, be most strongly construed against the cov-enantor; still the paramount rule is to so expound them as to give effect to the actual intent of the parties.... ’ In the recent case of Frander & Frander, Inc. v. Griffen, 457 So.2d 375 (Ala.1984), the Court cites with approval the ancient rule with regard to restrictive covenants but then, we suggest, demolishes the rule by saying: ‘Where the language of the covenants is found to be ambiguous, the intent of the developer is to be given great weight by the court in discerning whether the home should be allowed to remain in the subdivision.’
“We should not be understood as conceding that the decision of this case in any way should turn upon a rule of construction or upon an attitude toward restrictive covenants. However, we do suggest that the ancient attitude is no longer justified and is not the prevailing attitude of our society. Neither is it in the best interest of our society. In recent years we have witnessed in our state cow pastures and cotton fields turned into magnificent residential areas wherein people and families live together in community in a common atmosphere of residential peace and quiet and in the confidence of the security of their investment. Not only have these provided homes for our people but the hundreds of millions of dollars that have been required for this transformation have provided jobs for our people and developed our economy. It has all been made possible through the device of restrictive covenants. There is no reason or justification for our judicial branch of government to be hostile toward the device that makes this possible.”
A case may be presented to this Court that will make it necessary for this Court to re-think what the appellees’ attorney *328 refers to as its “ancient rule with regard to restrictive covenants”; however, the present ease can be resolved without that.
The language of the restrictive covenant is clear and unambiguous as to what it purports to protect: “[I]n order to foster the development and protect the value of said land for private residence purposes, the grantees (1) will use the land herein conveyed, for private residence purposes. ...”
In Macy v. Wormald, 329 S.W.2d 212 (Ky.1959), the Kentucky Supreme Court held: “The noun ‘residence’ itself is singular and the definitions in Websters New International Dictionary all indicate that a residence is a dwelling place or abode of a single person or family unit. This is likewise the commonly understood meaning.”
The Colorado Supreme Court defined the phrase “private residence purposes” in Flaks v. Wichman, 128 Colo. 45, 260 P.2d 737 (Colo.1953), as follows:
“The distinctive feature of the restriction before us is the use of the words ‘for private residence purposes.’ The word ‘private’ has a clear meaning and, as applied here connotes that the word ‘residence’ as used in its singular sense is peculiar to the privacy of one man and his family, and would not apply to structures for two or more families. The restriction does not say, ‘for private residences’ but distinctly reads, ‘for private residence purposes.’ ”
In Taylor v. Lambert, 279 Pa. 514, 124 A. 169 (1924), the Supreme Court of Pennsylvania was confronted with a covenant that restricted the use of property, on which a party sought to construct an apartment house, to use as a “private dwelling house.” The court wrote:
“But the words ‘private dwelling house’ have a much more restricted meaning than that attributed to ‘dwelling house’ or ‘one single dwelling’ in the prior cases. Their use not only exclude[s] tenements or buildings erected and operated as a business venture, having many of the characteristics of a hotel, such as an apartment house, but there is a wellde-fined difference between an apartment house, operated by the owner for profit through leasing different stories or suites of rooms, and a dwelling intended and calculated to be for the sole and exclusive occupancy of one family, suitably constructed for that purpose. In the term ‘a private dwelling’ the word ‘dwelling’ restricts the character of building by elminating all buildings for business purposes, such as stores, livery stables, garages, factories, and the like. The word ‘private’ further restricts the buildings to be placed thereon by excluding all such as are used for residential purposes of a public character, like hotels and general public boarding or apartment houses....
“... The distinction between a private dwelling house or a private residence on the one hand and a house built or occupied as a residence for two or more families is quite obvious. In the one case it is single, private and personal; in the other it is a sort of tenement affair. While the families occupy separate apartments distinct from each other, they are not private residences as the term is ordinarily understood.”
279 Pa. at 516, 124 A. at 170. See also Seeley v. Phi Sigma Delta House Corp., 245 Mich. 252, 222 N.W. 180 (1928).
In the instant case, the difference between using Lot 41 as a private residence (a place of abode for one family), and using it as a camping-recreational facility or temporary residence for four families is quite obvious.
The learned trial judge’s finding “that any structure, capable of being used as a dwelling, which exceeds a single dwelling on each lot is a breach of the restrictive covenant herein” is consistent with this Court’s interpretation of the clear and unambiguous language of the restrictive covenant.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.