On Application for Rehearing

MOORE, Judge.
This court’s opinion of October 7, 2011, is withdrawn, and the following is substituted therefor.
Mark Slaby and his wife, Maria Slaby, appeal from a judgment of the DeKalb Circuit Court (“the trial court”) enjoining the Slabys from the short-term rental of their property, a lot on which a cabin is situated, based on its determination that short-term rentals are prohibited by a restrictive covenant burdening their property. We reverse.

Procedural History

On June 19, 2009, Mountain River Estates Residential Association, Inc. (“the Association”), filed a complaint against the Slabys in the trial court. The Association asserted that the Slabys had violated a restrictive covenant burdening the lots in the Mountain River Estates subdivision in DeKalb County, which states:
“The subject property is restricted to single family residential purposes only. No commercial, agricultural or industrial use shall be permitted.”
Specifically, the Association asserted that the Slabys had been renting their property in the Mountain River Estates subdivision to various persons who are not related family members of the Slabys and, thus, that they had been using their property for commercial purposes in violation of the restrictive covenant. The Association requested a permanent injunction enjoining the Slabys from using their property for purposes other than as a single-family residence and from using their property for commercial purposes.
The Slabys filed an answer to the Association’s complaint on August 11, 2009. A trial was held on April 12, 2010, and both the Association and the Slabys filed briefs in the trial court upon the completion of the trial.
On January 18, 2011, the trial court entered a judgment, which states, in pertinent part:

“Single-family Residential Purposes Only

“The covenant restricts the use of the subject property to single-family residential purposes only. A single-family residence has been appropriately defined as a house occupied by one family. See Hooker v. Alexander, 129 Conn. 438, 29 A.2d 308 (1942). It follows that the term single-family residential purpose manifests an intent that a residence not be used for residential purposes by mul-ti-family or non-family groups.
“Construing the term residential purposes employing the common and ordinary meaning of the words used, it denotes the occupying of a premises for the purpose of making it one’s usual place of abode. It does not mean occupying a premises for vacation or transient purposes.
“The Texas Court of Appeals has held that a deed restriction providing that no lot in a subdivision could be used except *572 for ‘single-family residence purposes’ prohibited the homeowners from renting their property on a weekly and/or weekend basis, though the restriction did not prohibit all rental of property. Benard v. Humble, 990 S.W.2d 929 (Texas Ct.App.1999).
“The court finds that the use of the Slabys’ property by multi-family and non-family groups on an ongoing basis for vacation and transient purposes clearly violates the intent of the restriction that limits its use to single-family residential purposes.

“Commercial Use

“The covenant also prohibits commercial use of the subject property.
“The word commercial is commonly used to describe a wide array of business and trade enterprises that involve the exchange of goods or services for money. Here, the [Slabys] are providing persons the use of their house in exchange for money. They provide short-term lodging to transitory occupants, much like the lodging provided by a motel or a bed and breakfast. Like a motel or a bed and breakfast, they also collect and pay lodging taxes to the State. The [Slabys] advertise extensively and promote the rental of their house in a manner that is consistent with that of a commercial or business endeavor.
“The District Court of Florida has held that a covenant that permitted rental of residential property but that prohibited its use for business or commercial purposes precluded the use of the property as a bed and breakfast. The Court opined that the rental of a residence in the context of such deed restriction permitted the rental only as a residence and not as a facility serving temporary or transient guests from the general public. Robins v. Walter, 670 So.2d 971 (Fla.Dist.App.1995).
“The Court of Appeals of Michigan recently held that a prohibition against commercial use prevented property owners from using their property for vacation rentals for a week or less to transient guests. Enchanted Forest Property Owners Association v. Schilling, [ (No. 287614) ] (Mich. [Ct.] App., March 11, 2010) [ (not reported in N.W.2d) ].
“The court finds that the covenant restriction against commercial use of the property clearly and unambiguously precludes the rental use that [the Sla-bys] are making of their property.
[[Image here]]
“ADJUDICATION
“For the reasons set forth, the court finds that the use being made by the [Slabys] of the subject property, i.e., short-term rentals to transitory guests including multi-family groups, is a violation of the applicable restrictive covenant. Accordingly, it is adjudged that the [Slabys] are permanently enjoined from engaging in a commercial use of the property by renting it on a short-term basis of one week or less and from renting it to multi-family and non-family groups.”
The Slabys filed a motion to stay the execution of the trial court’s judgment pending appeal on February 23, 2011; that motion was granted, and the trial court set a supersedeas bond in the amount of $7,500. The Slabys appealed to the Alabama Supreme Court on February 28, 2011; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.

Facts

Mark Slaby testified that, before purchasing the property, the Slabys had read, and they completely understood, the re *573 strictive covenants and bylaws of the Association. One of those bylaws provided:
“All parcels shall be held, transferred, sold conveyed, used, leased, occupied, mortgaged and otherwise encumbered subject to all the terms and provisions of the Declaration [of Restrictive Covenants], the Articles of Incorporation, and these By-laws, including, but not limited to, the continuing lien herein described.”
(Emphasis added.) Mark testified that the above language indicated to him that leasing of the property would be permitted.
On February 15, 2006, he and his wife purchased two lots in the Mountain River Estates subdivision in Mentone on which they planned to construct a vacation home. At the time they purchased the property, the Slabys became members of the Association. Mark testified that he and his family began construction of a five-bedroom log cabin around December 2006. According to Mark, he had built the cabin as a vacation home for his family, but, as the economy grew worse, the Slabys decided, around June or July 2007, to improve the cabin so that it could be used for rentals. The Slabys did not seek or gain permission from the Association before renting their property; however, Maria testified that she had understood from comments made at an April 2007 property owners’ meeting and a conversation she had had with Ann Rogers, the director of Phase One of the Association, that property owners could rent their homes.[1] Mark testified that the Slabys first rented the property in October 2007, just after construction of the cabin was completed.
Mark testified that the name of their cabin in the Mountain River Estates subdivision is “Little River Harmony.” He testified that he had brochures drawn up and that the Slabys dispensed those brochures for one year at the DeKalb County Tourist Bureau; those brochures informed people how to contact the Slabys if they wanted to rent their cabin. He testified that they have one Web site that they maintain and that that Web site, in turn, links to another Web site for which they pay an annual amount to have their cabin listed for rental. He testified that persons who want to make a reservation to rent the cabin contacted Maria Slaby via e-mail or telephone. An e-mail placed into evidence by the Association indicates that all rentals of the cabin are subject to a “vacation rental agreement,” which governs the use of the property. According to Mark, at the time of trial, they were advertising the cabin on their Web site; he stated that Maria handles all the advertising and that they do not list the cabin with any rental company or management company. He further stated that they do not maintain a real-estate office, a business office, or a rental office on the premises. He stated that all rental money is exchanged off-site, via the Internet.
He testified that there are 2 different levels in the cabin; “D.C. al Fine,” which is the top floor, has 4 bedrooms and sleeps up to 14, and “Pizzicato,” which is the downstairs area, sleeps 6. The two levels are designed to be independent of one another with no interior access available to go from one level to the other. He testified that either the top level or the bottom level can be rented or the entire cabin can be rented. He testified that Maria had told him that up to 25 people had stayed there at once. At no time have the Slabys *574 rented the cabin to two separate groups simultaneously, however.
The Association placed into evidence a copy of the Web page advertising the cabin, which indicates that the cabin is available for rental “year round.” The Association also submitted a chart made by Mark, which showed that, from October 2007 to November 2009, the Slabys had rented the cabin a total of 380 days, or an average of 14 days per month. The Slabys’ records also showed that approximately 120 different persons or groups had rented the cabin during that period, and they kept detailed accounts of the check-in and checkout dates of their tenants as well as of all financial transactions involved in the rental of the cabin.
Mark presented a chart revealing that the average monthly rental revenue from the cabin is $2,773 and that the total revenue from October 2007 to November 2009 had been $74,858. He stated that the cost to buy the lots and to build the cabin was approximately $500,000. He testified that the average rental amount does not cover all the debt associated with the property and that they had not made any profit from renting the cabin. According to Mark, they rent the cabin as a means of trying to offset some of the debt that they incur on the cabin. If they are not able to offset that debt to some extent, Mark stated, it would jeopardize their ability to maintain the cabin. He testified that they had hired someone to clean the property and that Maria pays that person. Maria testified that she collects lodging tax and remits it to the State of Alabama and to the county.
With regard to the policies in effect at the cabin, Mark testified that he did not think there was a restriction on who could rent the cabin. He testified that they have rented to families, to church groups, to youth groups, and to women and mothers seeking a weekend vacation; he also testified that family reunions are popular because of the location of the property. He stated that the typical size of the group that rents the cabin is 10 to 15 people. Mark testified that they do not provide services for renters to purchase or transportation, food, or beverages for the renters. He testified that there is no restaurant on the premises and that renters must prepare their own meals, change their own linens, take out the garbage, do their own laundry, and clean the house during their stay. Mark stated that people use the cabin to “eat, sleep, and hang out.”
Mark testified that the Slabys screen their renters, that people are screened economically because the rental fees are high, that the Slabys make it clear that the cabin is their home, and that the Slabys do not encourage “spring breakers.” He testified further that Maria talks to or e-mails potential renters and that they had never had college kids stay as a group. Mark testified that they had never received any complaints from neighbors or Association members about the conduct or activities of any of their renters.
In February 2009, Mark sent an e-mail to the chairperson of the Restrictions Committee for the Mountain River Estates subdivision, proposing an amendment to the restrictive covenants. In the e-mail, Mark proposed that certain regulations be added to govern the rental of homes within the subdivision in order “to provide a way for owners of property in Mountain River Estates ... to rent/lease their property in a way that is harmonious to the other property owners” in the subdivision. At the annual property owners’ meeting in April 2009, the Restrictions Committee submitted for a vote a proposed amendment to the restrictive covenants to “expressly allow” for short-term rentals to the same tenant for no more than a two-week *575 period, subject to the regulations suggested by Mark. A majority of the property owners did not vote in favor of the amendment, and therefore it was not adopted.
A number of property owners in the Mountain River Estates subdivision testified at trial and requested that the trial court rule to prohibit the Slabys’ rental of their property.

Discussion

The Slabys raise two arguments on appeal. First, they contend that the trial court erred in construing the restrictive covenant as precluding short-term rentals to multifamily groups and nonfamilies. Second, assuming they do not prevail on the first issue, the Slabys argue that the trial court should have balanced the equities in their favor and determined that enforcing the restrictive covenant against them would result in an undue hardship. See Lange v. Scofield, 567 So.2d 1299, 1302 (Ala.1990). We consider the resolution of the first issue to be dispositive of this appeal, so we do not address the second issue.

I. The Meaning of “Single Family Residential Purposes”

A Structure Versus Use
The first sentence of the restrictive covenant at issue restricts the property owned by the Slabys “to single family residential purposes only.” That phrase, and other similar phrases, has engendered many conflicting opinions across the country as to whether the language restricts the types and number of structures that may be erected on the property, the use to which those structures may be put, or both. See Francis M. Dougherty, Annotation, Restrictive Covenant Limiting Land Use to “Private Residence” or “Private Residential Purposes”: Interpretation and Application, 48 A.L.R.4th 71 (1986). That particular phrase has often appeared in appellate-court opinions from this state, see, e.g., City of Mountain Brook v. Green Valley Partners I, 690 So.2d 359, 360 (Ala.1997); Turner v. Clutts, 565 So.2d 92 (Ala.1990); Laney v. Early, 292 Ala. 227, 292 So.2d 103 (1974); and Roegner v. Vinson, 723 So.2d 694, 695 (Ala.Civ.App.1998), but, to date, it has only been construed in controversies regarding the nature and number of structures that may be constructed on a burdened parcel of property. As applied in that context, the phrase “single family residential purposes only” precludes the erection of a single structure containing segmented living facilities, such as an apartment or condominium complex, see Orange Beach Marina, Inc. v. Warner, 500 So.2d 1068 (Ala.1986) (concluding that multifamily condominiums could not be erected on property restricted to use for a ‘“single family private dwelling or residence’ ”), or maintenance of multiple separate living facilities located on the same property, see Hines v. Heisler, 439 So.2d 4 (Ala.1983) (property could not be used to erect multifamily townhouse with shared driveway when subject to restrictive covenant requiring private residential use); and Waldrop v. Welch, 505 So.2d 325, 328 (Ala.1987) (restrictive covenant limiting use of subdivision lots to “‘private residence purposes only’ ” prohibited owners of lot from placing several camper-type travel trailers on single lot for use as camping recreational facilities or temporary residences), because such structures are not in the nature of a “single family residence” or a “private” residence,” i.e., “a place of abode for one family.” Waldrop, 505 So.2d at 328.
In this case, the parties did not litigate at trial the question whether the cabin owned by the Slabys, as designed and built, constitutes a “single family residence.” At oral argument on its application for rehearing, the Association argued *576 that, under Hines, the Slabys’ cabin violates the restrictive covenant because, it said, the cabin is in the nature of a duplex, built to accommodate more than one family. However, the Association conceded that it had not raised that argument in the trial court and that the trial court did not rest its judgment on that ground. Although this court can affirm a judgment on any valid ground, even one not considered by the trial court, that ground must be a legal one. Atkins v. State, 16 So.3d 792, 797 (Ala.Civ.App.2009) (citing Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003)). In this case, whether the cabin can be characterized as a duplex or as a “single family residence” would involve a disputed question of fact not a question of law. Because that factual issue was not raised or resolved in the trial court, this court cannot affirm the judgment on the basis that the cabin constitutes a duplex and not a single-family residence.
At trial, the parties did contest the issue whether the way in which the Slabys use the cabin violates the restriction requiring their property to be used for “single family residential purposes only.” The trial court adjudicated the controversy on the ground that the Slabys, by renting their cabin to non-family members on a short-term basis, were using their property in a manner inconsistent with the terms of the restrictive covenant. This appeal therefore squarely presents an issue of first impression for the appellate courts of this state as to the effect of the phrase “single family residential purposes only” on the use of a structure on the premises. Hence, prior caselaw informs, but does not control, our determination of that issue.

B. Effect on Identity of Occupants

In its judgment, the trial court found:
“A single-family residence has been appropriately defined as a house occupied by one family. See Hooker v. Alexander, 129 Conn. 433, 29 A.2d 308 (1942). It follows that the term single-family residential purpose manifests an intent that a residence not be used for residential purposes by multi-family or non-family groups.”
To the extent that the trial court meant that only a traditional nuclear family may reside in a “single family residence” and that occupancy by other, more tangentially related or unrelated persons breaches the restrictive covenant, we disagree.
Neither our supreme court, nor this court, has ever ruled that a structure that qualifies as a “single family residence” must be occupied by only one biological family or that a structure is not used for “single family residential purposes” because unrelated persons reside therein. Restricting the use of the cabin to occupation by only a traditional single nuclear family would prevent the Slabys from using their cabin to house their own extended family or from having overnight or weekend visits with their friends and associates, uses that are not only consistent with single-family residential purposes, but are expected.
The restrictive covenant at issue does not define the term “family.” Courts are generally inclined toward a broad understanding of the term “family” when that term is left undefined in restrictive covenants and zoning ordinances. See James L. Rigelhaupt, Jr., Annotation, What Constitutes a “Family” Within Meaning of Zoning Regulation or Restrictive Covenant, 71 A.L.R.3d 693 (1976).
“Now this word ‘family,’ contained in the statute, it is an expression of great flexibility. It is applied in many ways. It may mean the husband and wife, having no children and living alone together, or *577 it may mean children, or wife and children, or blood relatives, or any group constituting a distinct domestic or social body. It is often used to denote a small select corps attached to an army chief, and has even been extended to whole sects, as in the case of the Shakers.”
Carmichael v. Northwestern Mut. Benefit Ass’n, 51 Mich. 494, 496, 16 N.W. 871, 872 (1888). The word “family” has been given an even more elastic definition since Carmichael was decided. See Black’s Law Dictionary 679 (9th ed.2009) (defining “family” primarily as: “A group of persons connected by blood, by affinity, or by law, esp. within two or three generations.”).
Moreover, the restrictive covenant does not provide that the burdened property shall be occupied by “not more than one single family unit.” See Jayno Heights Landowners Ass’n v. Preston, 85 Mich.App. 443, 447, 271 N.W.2d 268, 270 (1978) (construing such wording as preventing use of single-family dwelling for operation of group home for elderly). As the Slabys also point out, the restrictive covenant does not require that the cabin be exclusively “owner-occupied” or the like, so they “are not constrained in the character of their residential use of the property by the deed covenants.” Silsby v. Belch, 952 A.2d 218, 222 (Me.2008). See also Bear v. Bernstein, 251 Ala. 280, 232, 36 So.2d 483, 484 (1948) (“courts should not extend, by construction, the restraint beyond its proper scope by writing into it what is not clearly inhibited”).
“[W]hen the term ‘single-family dwelling’ is coupled with the phrase ‘residential purposes only,’ nonresidential uses may not be made of the building. However, in this latter situation, courts have also held that there is no requirement that the dwelling be inhabited by a ‘single’ family, as long as the building is used for residential purposes.”
43 Am.Jur. Proof of Facts 473 (Residential Property) § 8 (3d ed.1997) (emphasis added) (citing Greenbrier-Cloverdale Homeowners Ass’n v. Baca, 763 P.2d 1 (Colo.Ct.App.1988) (use of house as group home for eight unrelated, developmentally disabled adults did not violate restrictive covenant requiring “ ‘single-family dwelling’ ”); and Vienna Bend Subdivision Homeowners Ass’n v. Manning, 459 So.2d 1345 (La.Ct.App.1984) (accord)). See also Bellarmine Hills Ass’n v. Residential Sys. Co., 84 Mich.App. 554, 269 N.W.2d 673 (1978) (discussing at length the problem of defining the word “family” in the context of a restrictive covenant requiring that property be used for single-family residences); and Costley v. Caromin House, Inc., 313 N.W.2d 21 (Minn.1981) (group home for six mentally challenged adults and two resident house parents was a single-family unit within meaning of city zoning ordinance).[2]
*578 “Restrictive covenants will be recognized and enforced when established by contract, but they are not favored and will be strictly construed. Carpenter v. Davis, 688 So.2d 256, 258 (Ala.1997). Our Supreme Court has held that
“ ‘in construing restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, effect will be given to the manifest intent of the parties when that intent is clear.... Furthermore, restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and circumstances known to the parties.’
“Hines v. Heisler, 439 So.2d 4, 5-6 (Ala.1988).”
Hipsh v. Graham Creek Estates Owners Ass’n, 927 So.2d 846, 848-49 (Ala.Civ.App.2005). See also Grove Hill Homeowners’ Ass’n v. Rice, 43 So.3d 609, 614 (Ala.Civ.App.2010).
The evidence reflects that the Slabys have rented the cabin to only one group of persons at a time and that the persons within the individual groups have not been strangers to one another, as one would expect to find at hotels, motels, and other similar commercial lodgings, but are affiliated persons who rent the cabin as a coordinated whole. Sometimes those groups are not blood relations, but, as shown, that is not the only characteristic of a “family.” The mere fact that the renters are biologically unrelated to the Slabys or to each other does not mean that, when renting the cabin, they are using the premises for other than “single family residential purposes.”

C. Residential Uses

At least two other jurisdictions have determined that the short-term rental of a vacation home does not violate restrictions requiring property to be used for “residential purposes” or similar wording. In Lowden v. Bosley, 395 Md. 58, 909 A.2d 261 (2006), cited by the Slabys, the Maryland Court of Appeals determined that the owners of a vacation home had not violated a restrictive covenant requiring that lots in the subdivision be used for “ ‘single family residential purposes only’ ” by renting their home to other families on a short-term basis. Specifically, the court concluded that the covenant “on its face [did] not prohibit the short-term rental of a defendant’s home to a single family which resides in the home.” 395 Md. at 67, 909 A.2d at 266. The court reasoned that “ ‘[residential use,’ without more, has been consistently interpreted as meaning that the use of the property is for living purposes, or a dwelling, or a place of abode,” and that “[t]he transitory or temporary nature of such use does not defeat the residential status.” 395 Md. at 68, 909 A.2d at 267.
Similarly, in Mullin v. Silvercreek Condominium, Owner’s Ass’n, 195 S.W.3d 484 (Mo.Ct.App.2006), the Missouri Court of Appeals affirmed a judgment allowing nightly rentals of condominiums that were subject to a restrictive covenant requiring each unit to be “ ‘used, improved, and devoted exclusively to residential use by a single family.’ ” 195 S.W.3d at 488. The court stated:
“The plain and ordinary meaning of ‘residential purposes’ is ‘one in which people reside or dwell, or which they make their homes, as distinguished from one which is used for commercial or business purposes.’ Stated another way, the unit owners’ use of their units and restricted common elements must be for the purpose of residing or dwelling there, or in a manner making the realty a home, as distinguished from using the realty for commercial or business purposes.”
*579 195 S.W.3d at 490 (citations omitted). The court found that the restriction that the condominium units be used “by a single family” should be construed together with another restriction so that the owner could be allowed to rent the unit to others. Id.
We agree with those courts that property is used for “residential purposes” when those occupying it do so for ordinary living purposes. Thus, so long as the renters continue to relax, eat, sleep, bathe, and engage in other incidental activities, as the undisputed evidence indicates renters did in this case, they are using the cabin for residential purposes.

D. Effect on Duration of Rental

In its judgment, the trial court, instead of focusing on how the renters used the cabin, concentrated on the short-term nature of that use. The trial court stated:
“Construing the term residential purposes employing the common and ordinary meaning of the words used, it denotes the occupying of a premises for the purpose of making it one’s usual place of abode. It does not mean occupying a premises for vacation or transient purposes.”
(Second emphasis added.) The evidence clearly establishes that the Slabys, like many of the other landowners in the subdivision, use their property as a vacation home, staying there only intermittently or seasonally. Under the trial court’s reasoning, and the reasoning employed by the Texas Court of Appeals in Benard v. Humble, 990 S.W.2d 929 (Tex.Ct.App.1999), upon which the trial court relied, unless they use their property as their primary residences, the other landowners in the subdivision also would be in violation of the restrictive covenant.
On de novo review, see Hipsh v. Graham Creek Estates Owners Ass’n, 927 So.2d at 848 (treating construction of unambiguous restrictive covenant as a question of law to be reviewed de novo), we hold that the term “residential purposes” does not mean only “occupying of a premises for the purpose of making it one’s usual place of abode.” Our supreme court did not hold in Waldrop, supra, that the term “residence” means usual place of abode; rather, it stated only that the term is satisfied when a building is “a place of abode.” 505 So.2d at 828. So defined, the cabin would be used for “residential purposes” anytime it is used as a place of abode, even if the persons occupying the cabin are residing there temporarily during a vacation. See also Lowden, 395 Md. at 68, 909 A.2d at 267 (“The transitory or temporary nature of such use does not defeat the residential status.”).
The Association’s bylaws recognize that the Slabys can lease their property, and the judgment impliedly allows the Slabys to lease their property for periods longer than a week. The judgment only prohibits “short-term” rentals.
“[T]here is utterly nothing in the language of the Declaration which provides any basis for drawing a distinction between long-term rentals and short-term rentals. Moreover, at what point does the rental of a home move from short-term to long-term: a week? a month? a season? three months? six months? one year? or several years?”
Lowden, 395 Md. at 70, 909 A.2d at 268. We read nothing in the restrictive covenants, as written, addressing the acceptable length of a rental or lease of the property. As noted, a majority of the members of the Association rejected attempts to provide further definition of the property owners’ leasing rights. In the absence of some specific restriction, the Slabys presumably can authorize their renters to use the cabin in the same manner, and for the same period, that the *580 Slabys themselves use it. Cf. Walker v. Southern Trucking Corp., 283 Ala. 551, 219 So.2d 379 (1969) (when lessor purported to lease property for commercial use, which was prohibited by local zoning ordinance, lease contract was void). We therefore decline to adopt the meaning of “residential purpose” employed by the trial court.

E. Summary

In summary, we conclude that the phrase “single family residential purposes only,” when applied in the present context, does not require permanent occupancy by only one traditional nuclear family. That phrase does not prohibit the Slabys from renting their cabin on a short-term basis to individuals or groups of associated persons unrelated by blood to the Slabys or to one another.
II. The Meaning of the “Commercial Use” Prohibition
In its judgment, the trial court found that the Slabys’ rental of the cabin violates the prohibition against “commercial use.” When the Slabys rent their cabin, they no doubt realize some pecuniary gain, but neither that financial benefit nor the advertisement of the property or the remittance of a lodging tax transforms the nature of the use of the property from residential to commercial as the trial court concluded.
In Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915 (1966), our supreme court held that a restrictive covenant requiring that the burdened property be used solely for farming and dwelling purposes impliedly prohibited commercial uses. Noting that the property owners planned on using the property to manage a 30- to 40-mobile-home trailer park, complete with a rental office, a laundry area, a swimming pool, and a recreation room, the court held that “the proposed use is for a commercial purpose and not for dwelling purposes.” 279 Ala. at 458, 186 So.2d at 918. On application for rehearing, the Association maintains that Reetz compels the conclusion that the Sla-bys’ short-term rental of their cabin constitutes a prohibited commercial use of their property.
Unlike in Reetz, in which the property owners planned to manage the mobile-home park on site, in this case no mercantile or similar activity occurs at the cabin. The actual renting of the cabin, and any financial transactions associated therewith, occurs off-site. The Slabys do not solicit renters on-site, but do so through the Internet, where potential tenants can view the premises without actually going there. While occupying the cabin, the tenants must cook and clean for themselves and they do not receive any services from the Slabys. Although the Slabys remit a lodging tax, which is payable by persons “engaging in the business of renting or furnishing any room or rooms, lodging, or accommodations to transients in any ... tourist cabin ... in ... DeKalb [County],” § 40-26-1, Ala.Code 1975, that fact does not detract from the conclusion that no commercial activity takes place on the premises.
Most importantly, unlike in Reetz, the income the Slabys derive from the rental of the property derives solely from the use of the property in the same manner as the other landowners in the subdivision use their properties. The fact that the Slabys receive rental income does not transform the character of the surrounding subdivision like the maintenance of a mobile-home park or a hotel would. As the Maryland Court of Appeals explained in Lowden:
“The owners’ receipt of rental income in no way detracts from the use of the properties as residences by the tenants. There are many residential uses of property which also provide a commercial *581 benefit to certain persons. Both in Maryland and in a great majority of other states, over 30 percent of homes are rented rather than owned by the families residing therein, thus providing much rental income to landlords. In addition to conventional rentals, a commercial benefit may be realized from residential property by persons or entities holding ground rents, mortgages, or deeds of trust. When property is used for a residence, there simply is no tension between such use and a commercial benefit accruing to someone else.”
395 Md. at 69, 909 A.2d at 267-68 (footnote omitted); see also Pinehaven Planning Bd. v. Brooks, 138 Idaho 826, 829-30, 70 P.3d 664, 667-68 (2003) (holding that restrictive covenants disallowing “‘commercial or industrial ventures or business of any type’ ” from being maintained on any lot in the subdivision were not ambiguous and that, “according to their plain meaning, clearly allow the rental of residential property,” whether short-term or long-term, because the use “does not violate the prohibition on commercial and business activity as such terms are commonly understood”).
The Slabys cite a number of other cases that also support their argument that the short-term rental of their property is not prohibited by a commercial-use restriction. See Applegate v. Colucci, 908 N.E.2d 1214, 1219-21 (Ind.Ct.App.2009) (although the rental of property subject to restrictive covenants requiring parcels to be “‘used only for residential purposes,’ ” prohibiting commercial business from being carried on, and stating that “ ‘[njothing herein contained shall prevent the leasing or renting of property or structures for residential use....’” was not prohibited, the maintenance of a rental office on the property created a question of fact as to whether covenants were violated); Scott v. Walker, 274 Va. 209, 218, 645 S.E.2d 278, 283 (2007) (rental of property not prohibited by restrictive covenants requiring lots to be used for residential purposes because covenants were silent as to leases or rental agreements and the term “residential purposes” was ambiguous); Catawba Orchard Beach Ass’n v. Basinger, 115 Ohio App.3d 402, 409, 685 N.E.2d 584, 589 (1996) (short-term rental of property did not violate restrictive covenant when no business was conducted on property and property was used as single-family residences for one family each); Siwinski v. Town of Ogden Dunes, 922 N.E.2d 751, 754 (Ind.Ct.App.2010) (“ ‘single-family dwelling1 ” in zoning ordinance refers to physical activity conducted upon the property rather than the profit-making intentions of the homeowners); and Mason Family Trust v. DeVaney, 146 N.M. 199, 202, 207 P.3d 1176, 1179 (N.M.Ct.App.2009) (strictly and reasonably construed, a restriction stating that property shall be used for dwelling purposes only and not for business or commercial purposes does not forbid short-term rental for dwelling purposes).
The Association relies on Enchanted Forest Property Owners Ass’n v. Schilling, (No. 287614, March 11, 2010) (Mich.Ct.App.2010) (not reported in N.W.2d), which was also relied on by the trial court. In Schilling, the Michigan Court of Appeals interpreted a restriction stating that “ ‘[a]ny structure erected shall be a private residence for use by the owner or occupant. ... No part of said premises shall be used for commercial or manufacturing purposes.’ ” The court concluded that the restriction “expresses a clear intent to permit use of the property only for private residential use” and that “[u]se of the property to provide temporary housing to transient guests is a commercial purpose, as that term is commonly understood.” We find it noteworthy that the restriction in Schilling includes language restricting *582 the use to the “ 'owner or occupant/ ” thus making the covenant in that case more restrictive than the covenants in a number of other cases cited by the Slabys that do not contain such language, like the covenant in the present case. Therefore, we conclude that Schilling is distinguishable from the present case.
The trial court also relied on Robins v. Walter, 670 So.2d 971 (Fla.Dist.Ct.App.1995). In Robins, the First District Court of Appeals of Florida determined that the operation of a bed and breakfast was prohibited by restrictive covenants limiting the erection of structures on the property to ‘“one detached single family dwelling unit’ ” and requiring that no structure be used for business or commercial purposes. 670 So.2d at 973. The covenants in Robins further noted that “‘the renting of the premises in whole or in part shall not be construed to be a business or commercial operation.’” Id. We note first that the covenants in the present case, unlike those at issue in Robins, are silent as to the permissibility of property rental. Moreover, based on the Florida court’s determination that the operation of the bed and breakfast was prohibited by the covenants at issue in Robins, it is clear that that court distinguished the operation of a bed and breakfast from “renting of the premises,” which was expressly permitted by the restrictive covenants in that case; it stated that “[t]he rental of a residence in the context of the deed restrictions in the instant case and under common understanding involves the rental as a residence rather than just a facility serving temporary or transient guests from the general public.” Id. at 975. Thus, the present case, in which the Slabys rent their cabin as a residence, but do not provide any services to their tenants, is distinguishable from Robins.
We conclude that the restriction in the covenant at issue prohibiting “commercial use” of the property does not prohibit the Slabys from renting their property on a short-term basis. We agree with the reasoning in Pinehaven Planning Board v. Brooks, supra, and the majority of other jurisdictions that have addressed the issue, that the purposes for which the property is used in this case, such as for eating, sleeping, and other residential purposes, does not amount to commercial use.

Conclusion

Based on the foregoing, we conclude that the Slabys are not using their cabin in a manner inconsistent with the restrictive covenant at issue by renting the cabin on a short-term basis to various groups for residential purposes. We limit this decision to the circumstances presented in this case, noting that any number of factors, such as those presented in cases cited above from other jurisdictions, could affect the application of restrictive covenants to the short-term rental of property subject to such covenants. We reverse the trial court’s judgment prohibiting the Slabys’ rental of their property, and we remand the case for the entry of a judgment consistent with this opinion. Because we are reversing the trial court’s judgment based on our interpretation of the covenant, we decline to address the Slabys’ remaining argument on appeal.
APPLICATION GRANTED; OPINION OF OCTOBER 7, 2011, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
BRYAN and THOMAS, JJ„ concur.
PITTMAN, J., concurs specially.
THOMPSON, P. J., concurs in the result, without writing.

. The minutes from that meeting do not reflect any discussion regarding rental of property within the subdivision, and several witnesses testified that they were present at the meeting and did not hear any discussion regarding renting. Rogers testified that she did not give the Slabys permission to rent the cabin.

. In Civitans Care, Inc. v. Board of Adjustment of Huntsville, 437 So.2d 540 (Ala.Civ.App.1983), this court affirmed a judgment denying a favorable interpretation of a zoning ordinance to a nonprofit organization desirous of operating a group home for mentally challenged adults in an area zoned for occupancy by one or two families. The trial court in that case recognized that the group constituted a "family” within the definition contained in the zoning ordinance, namely: " 'Any number of individuals living together as a single housekeeping unit and doing their own cooking on the premises.’ ” 437 So.2d at 542. However, the trial court found, and this court agreed, that the nonprofit organization planned to operate the group home as a "boarding house” or a "rooming house” in violation of other sections of the zoning ordinance. 437 So.2d at 542-43 (citing City of Guntersville v. Shull, 355 So.2d 361 (Ala.1978)). We find Civitans Care to be distinguishable from the present case and not in conflict with our holding today that the undefined term "family” should be construed broadly in a restrictive covenant.