# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD EAGER and CAROL EAGER,

        Plaintiffs-Appellants,

v

CECILIA PEASLEY, Individually and as Trustee
of the CECILIA L. KAURICH TRUST,

        Defendant-Appellee,

and

JEFFREY CAVANAUGH and SANDRA
CAVANAUGH,

        Defendants.

FOR PUBLICATION
November 30, 2017
9:05 a.m.

No. 336460
Alcona Circuit Court
LC No. 2014-002282-CH

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

MURPHY, J. (*dissenting*).

Plaintiffs Donald and Carol Eager filed a complaint against defendants Cecilia Peasley, individually and as trustee of the Cecilia L. Kaurich Trust, and Jeffrey and Sandra Cavanaugh, alleging that defendants, who are neighboring property owners, were renting out their lake houses for short-term use in violation of restrictive deed covenants that limited the use of their premises to "private occupancy," that only permitted the construction of "private dwelling[s]," and that did not allow for the "commercial use" of their premises.[1]  Plaintiffs' lawsuit claimed breach of the deed restrictions and creation of a nuisance, and they sought injunctive relief in the form of an order enjoining any further rental activity and abating the purported nuisance.  The crux of the dispute concerns the proper interpretation of the restrictive covenant, and the parties submitted stipulated facts to the trial court for resolution.  The trial court issued a written opinion and order denying plaintiffs' request for injunctive relief, concluding that the language in the

---

[1] Defendants Jeffrey and Sandra Cavanaugh entered into a settlement agreement with plaintiffs, and this appeal pertains solely to defendant Peasley, whom I shall refer to as "defendant" for the remainder of my dissent.

-1-

deed restrictions is ambiguous with respect to whether short-term rentals are permissible, that any doubts regarding the interpretation of the restrictive covenant must be resolved in favor of the free use of the property and against the would-be enforcers, and that defendant, therefore, could not be found to have violated the deed restrictions.[2]  Plaintiffs appeal as of right, and I would affirm the trial court's ruling.  Accordingly, I respectfully dissent.

## I.  STANDARD OF REVIEW

In *Terrien v Zwit*, 467 Mich 56, 60-61; 648 NW2d 602 (2002), our Supreme Court observed as follows:

> Because the parties have stipulated the essential facts, our concern here is only with the law: specifically, whether covenants permitting only residential

---

[2] The majority states that the trial court, after reciting the stipulated facts and acknowledging the parties' arguments, "inexplicably denied plaintiffs' request for injunctive relief."  This observation is not consistent with my review of the record.  In its written opinion and order, the trial court recited the stipulated facts, reviewed the parties' arguments, set forth Michigan law on restrictive covenants, discussed some opinions from other jurisdictions, state and federal, and then ruled as follows:

> The restrictive covenant at issue here does not use the term "residential purpose" but instead uses the phrase "private dwelling[,]" which is even more ambiguous than "residential purpose." The restriction [here] further describes the subdivision as having "summer resort dwellings[,]" which may reasonably be construed to mean cottages or vacation homes.

> In the absence of a clear definition by Michigan Courts of "private dwelling" or "commercial use[,]" the restriction must be construed in favor of the free use of the land. It would have been easy to specifically articulate the intent that "private dwelling" and "commercial use" specifically prohibited short-term rentals but such was not the case. In the absence of such clarity, and the fact that numerous courts have found "residential purpose" and "commercial enterprise" to be ambiguous, in the case at bar it is clear that pursuant to the stipulated facts there is no business or commercial enterprise being conducted on the premises itself. Further[,] the short-term rentals allow transients to use the property in the same fashion as all the other property owners, and therefore do not violate any use provisions of the restriction.

The trial court indicated that it was relying on well-established common-law principles that courts will not lightly restrict the free use of property, that a restrictive covenant is to be strictly construed against the would-be enforcer, and that all doubts as to the construction of a restrictive covenant must be resolved in favor of the free use of property.  The trial court denied plaintiffs' request for injunctive relief, determining "that defendant [was] not in violation of the restrictive covenant."

-2-

uses, and expressly prohibiting commercial, industrial, or business uses, preclude the operation of a "family day care home," and, if so, whether such a restriction is unenforceable as against "public policy." These are questions of law that are reviewed de novo[.] [See also *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015) ("This Court . . . reviews de novo the proper construction of restrictive covenants involving real property.").]

We are likewise concerned solely with the construction of deed restrictions, given that the parties stipulated to the facts; therefore, our review is de novo. Additionally, this Court reviews de novo a trial court's dispositional ruling on equitable matters. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005).

## II. THE LAW REGARDING RESTRICTIVE COVENANTS

In *Conlin*, 313 Mich App at 255-256, this Court recited the principles that have developed in our civil jurisprudence pertaining to deed restrictions or restrictive covenants:

> It is well-grounded in Michigan's common law that property owners are free to attempt to enhance the value of their property in any lawful way, by physical improvement, psychological inducement, contract, or otherwise. A covenant is a contract created with the intention of enhancing the value of property, and, as such, it is a valuable property right. However, although Michigan courts recognize that restrictions are a valuable property right, this right must be balanced against the equally well-settled principle that courts will not lightly restrict the free use of property. Courts sitting in equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear. Similarly, the provisions of a covenant are to be strictly construed against the would-be enforcer and doubts resolved in favor of the free use of property. When construing a restrictive covenant, courts may only give it a fair construction; courts may not broaden or limit the restriction. To that end, courts will not infer the existence of a restriction—the restriction must be expressly provided in the controlling documents. Courts will not enlarge or extend a restriction through interpretation, even to accomplish what it may be thought the parties would have desired had a situation that later developed been foreseen by them at the time the restriction was written. [Citations, quotation marks, and ellipsis omitted.]

Restrictive covenants allow parties to preserve desired characteristics of a neighborhood, "which the parties may consider valuable for raising a family, conserving monetary value, or other reasons particular to the parties." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007). It is a "well-understood proposition that a breach of a covenant, no matter how minor and no matter how *de minimis* the damages, can be the subject of enforcement." *Terrien*, 467 Mich at 65.

"If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations[.]" *Bloomfield Estates*, 479 Mich at 214. When a term in a restrictive covenant

is not defined within the covenant or deed, the term is to be construed in accordance with its commonly used meaning. *Id.* at 215. Additionally, under the doctrine of *noscitur a sociis*, a term or phrase is given meaning by its setting or context. *Id.* The simple fact that a restrictive covenant in a deed does not define a relevant term does not render the covenant ambiguous; rather, as noted, the term must be interpreted in accordance with its commonly used meaning. *Terrien*, 467 Mich at 76-77.

## III. DISCUSSION

### A. PRIVATE OCCUPANCY AND PRIVATE DWELLING

The terms in dispute are "private occupancy," "private dwelling," and "commercial use," none of which are defined in the restrictive covenant or deed. "In building restriction cases involving covenants, the term 'private dwelling house' means *a building designed as a single dwelling to be used by one family*." *Phillips v Lawler*, 259 Mich 567, 571; 244 NW 165 (1932) (emphasis added); see also *Seeley v Phi Sigma Delta House Corp*, 245 Mich 252, 254; 222 NW 180 (1928).[3] I shall refer to this definition as the "one-family definition" relative to occupancy and use of a dwelling. As reflected in the stipulated facts, the restrictive covenant at issue originated in 1946, after *Phillips* and *Seeley* had been issued. When the common grantor employed the terms "private occupancy" and "private dwelling," it is reasonable to conclude that the grantor's intent was for those terms to be construed and understood in a manner consistent with the status of the law at the time and our Supreme Court's determination that a "private dwelling house" means a dwelling designed to be used by one family.

Plaintiffs narrowly construe the one-family definition, arguing that it necessarily limits occupancy and use of a dwelling to "one family, not multiple parties on a transient basis." In essence, plaintiffs' position is that "one family" equates to the "same family" relative to the entire period of ownership of a dwelling, ostensibly limiting occupancy and use to the grantee or grantees under a deed of conveyance, along with any family members. Defendant broadly interprets the one-family definition, contending that occupancy or use of a dwelling by one family can encompass any given family that rents the dwelling at a point in time, if even for a short period, such as the ten different families that rented defendant's house in 2016. Defendant maintains that the "private" aspect of occupancy or of use of a dwelling is not lost when families, individuals, or suitably-small groups rent a dwelling, with their occupancy and use of the dwelling being to the exclusion of all non-renters and the public in general. According to

---

[3] Moreover, the word "private," which, used as an adjective, modifies "occupancy" and "dwelling," is defined as "intended for or restricted to the use of a particular person, group, or class . . .[;] belonging to or concerning an individual person, company, or interest . . . [;] restricted to the individual or arising independently of others[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). Occupancy or use restricted to a particular person or group, such as a family, would be consistent with the Supreme Court's definition of "private dwelling house."

defendant, the occupancy and use of a dwelling remains private if authorized and permitted by the owner.[4]

I find it impossible to discern whether the common grantor, by employing the terms "private occupancy" and "private dwelling," intended to preclude an owner from renting out premises located in the subdivision, especially in the context where a house is leased to a family, as is mostly the case with respect to defendant's rentals. The parties present reasonable arguments in favor of their conflicting interpretations of "private occupancy" and "private dwelling." It would have been quite simple for the common grantor to have included language expressly barring rentals or mandating that a dwelling be owner-occupied, but this was not done. Taking into consideration the principles that courts will not lightly restrict the free use of property, that restrictions must be clear and expressly provided for in controlling documents, that restrictions are to be strictly construed against a would-be enforcer, and that any doubts are to be resolved in favor of the free use of property, *Conlin*, 313 Mich App at 255-256, I would hold that the "private occupancy" and "private dwelling" language does not bar defendant from using her lake house for short-term rentals.

Contrary to the majority's view, *Seeley*, 245 Mich 252, wherein the Court ruled that the restrictive covenant limiting use of the land to "one single private dwelling house" prohibited the construction of a fraternity house, is easily distinguishable. The *Seeley* Court found that the restriction meant "one house, for a single family, living in a private state," which did not encompass "a college fraternity, or chapter house, intended to provide board and rooms for part of the members and a gathering place for fraternity purposes for all members." *Id.* at 256. Plaintiffs' short-term rentals, almost exclusively to families, are much more consistent with a one-house, single-family, private-state use of the property than with the operation of a fraternity house. *Seeley* ultimately provides no clear insight or definitive direction with respect to whether short-term rentals are permissible under the language at issue in the instant case. Ambiguity persists, which supports my position.

In *O'Connor v Resort Custom Builders, Inc*, 459 Mich 335; 591 NW2d 216 (1999), our Supreme Court examined a residential-purposes subdivision restriction, holding that interval ownership or timesharing violated the restriction. The Court noted that homes in the subdivision were also used for daily and weekly rentals, and the defendant argued, in part, that the restriction, if it indeed barred timeshares, was waived because short-term rentals had been and were being allowed. *Id.* at 338-339. After concluding that interval ownership does not constitute a residential purpose under the facts of the case, the *O'Connor* Court addressed the defendant's waiver argument and the analogy to short-term rentals:

> With regard to whether plaintiffs waived the use restriction by allowing short-term rentals, we agree with the circuit court that such an alternative use is

---

[4] I note that defendant also argues that the reference to "summer resort dwellings" in the restrictive covenant lends support for her position that short-term vacation rentals are permissible. At best, the language merely likens the dwellings in the subdivision to "summer resort dwellings," but really provides no insight in regard to whether rentals are permitted.

different in character and does not amount to a waiver of enforcement against interval ownership. Further, defendants have not demonstrated that the occasional rentals have altered the character of the . . . subdivision to an extent that would defeat the original purpose of the restrictions. [*Id.* at 345-346.[5]]

Here, the term "residential purposes" is not contained in the restrictive covenant; there is no express "residential" limitation of any kind in the covenant.[6] Assuming that the "private occupancy" limitation equates to permitting only residential uses or purposes, *O'Connor* tends to support defendant's position with respect to short-term rentals. Although couched in terms of analyzing a waiver issue, the Court nonetheless stated that short-term rentals are different in character than timeshares, strongly suggesting that such rentals would not violate a residential-purposes restriction.

In sum, I agree with the trial court's analysis and ruling regarding the terms "private occupancy" and "private dwelling."

B. COMMERCIAL USE

In my view, the prohibition against the "commercial use" of property also lacks clarity in relationship to divining whether short-term rentals to transients are permitted. The term "commercial" is defined as "occupied with or engaged in commerce or work intended for commerce." *Merriam-Webster's Collegiate Dictionary* (11th ed). And in *Terrien*, 467 Mich at 64, our Supreme Court, quoting Black's Law Dictionary (6th ed), defined "commercial use" as meaning, in legal parlance, " 'use in connection with or for furtherance of a profit-making enterprise.' " Although the stipulated facts might perhaps be viewed as showing that defendant is engaged in commerce and using her house to further a profit-making enterprise, the house itself completely retains its residential and familial character while being rented and there are no services provided on site, as would be the case with a hotel or bed and breakfast establishment. Unlike the family day care home that was found to be a commercial or business use of the

---

[5] The Supreme Court effectively rejected this Court's determination in the case that interval ownership cannot be distinguished from year-round renting. *O'Connor*, 459 Mich at 341.

[6] The majority indicates its agreement with and adopts the reasoning in *Torch Lake Protection Alliance v Ackermann*, unpublished opinion per curiam of the Court of Appeals, issued November 30, 2004 (Docket No. 246879), examining the opinion at length. Like *O'Connor*, *Torch Lake* concerned a residential-purposes limitation, which language does not exist here. Moreover, the restrictions in *Torch Lake* specifically barred use of the property as a " 'tourist camp or public place of resort.' " *Torch Lake*, unpub op at 1. For these reasons, I find *Torch Lake* to be distinguishable. The majority relies on and adopts another unpublished opinion issued by this Court; however, unpublished opinions are not binding, and I find the case cited by the majority to be unpersuasive. See MCR 7.215(C)(1). I think that this Court would be better served by not utilizing unpublished opinions in crafting its opinions, especially its published opinions.

dwelling in *Terrien*, 467 Mich at 83, there are no business operations or commercial activities whatsoever taking place on defendant's premises during a rental period.[7]

I could not locate any published Michigan opinions that are directly on point in regard to the issue presented. However, courts from other jurisdictions have held, apparently uniformly so, that language in a restrictive covenant that precludes the commercial use of premises or prohibits using property for commercial purposes or enterprises does not bar short-term rentals of a dwelling. In *Mason Family Trust v Devaney*, 146 NM App 199, 201; 207 P3d 1176 (2009), the New Mexico Court of Appeals held that "rental of a house or abode for a short-term use as a shelter to live in is significantly different from using the property to conduct a business or commercial enterprise on the premises." In *Silsby v Belch*, 952 A2d 218, 222-223 (Me, 2008), the Supreme Judicial Court of Maine held:

> Adopting [the plaintiffs'] reading would result in an affirmative rule of law holding that every single- or multi-family residence that is rented for use by someone other than the owner is a commercial enterprise. Under such a rule of law, innumerable properties would invariably run afoul of local zoning ordinances prohibiting commercial uses. The use of this property is residential; the fact that this use may involve income in some fashion does not change a fundamentally residential use to a commercial enterprise. The fact remains that the original grantor could have limited the use of this property to an owner-occupied, single-family residence if she wished by placing such commonly used language in the covenant.

In *Yogman v Parrott*, 325 Or 358, 366; 937 P2d 1019 (1997), the Oregon Supreme Court ruled that because a prohibition against short-term rentals was not plainly within the provisions of the covenant, the defendants were permitted to rent their property to others despite restrictive language that did not allow commercial enterprises on the property. In *Pinehaven Planning Bd v Brooks*, 138 Idaho 826, 830; 70 P3d 664 (2003), the Idaho Supreme Court held:

> Renting the property for residential purposes, whether short or long-term, does not fit within the[] prohibitions [against commercial ventures or businesses of any type]. The only building on the [defendants'] property remains a single-family dwelling and renting this dwelling to people who use it for the purposes of eating, sleeping, and other residential purposes does not violate the prohibition on commercial and business activity as such terms are commonly understood.

In *Houston v Wilson Mesa Ranch Homeowners Ass'n, Inc*, 360 P3d 255, 260 (Colo App, 2015), the Colorado Court of Appeals, after reviewing out-of-state opinions that concluded that covenant prohibitions against commercial use did not bar short-term rentals of residential property, either because they were ambiguous or because they unambiguously did not preclude

---

[7] In *Terrien*, 467 Mich at 59 n 2, the Court noted that a "family day care home" receives minor children for care and supervision. Thus, employed adult personnel are on site providing services. But here there are no on-site services or personnel.

such use, held that it agreed with these cases and that "short-term vacation rentals . . . are not barred by the commercial use prohibition in the covenants" at issue. In *Russell v Donaldson*, 222 NC App 702, 706-707; 731 SE2d 535 (2012), the North Carolina Court of Appeals held:

> Under North Carolina case law, restrictions upon real property are not favored. Ambiguities in restrictive covenants will be resolved in favor of the unrestricted use of the land. A negative covenant, prohibiting business and commercial uses of the property, does not bar short-term residential vacation rentals.

Finally, I find instructive and persuasive the following sentiments expressed by the Alabama Court of Appeals in *Slaby v Mountain River Estates Residential Ass'n, Inc*, 100 So3d 569, 580 (Ala App, 2012), which concerned a subdivision cabin and a restrictive covenant prohibiting commercial uses of the property:

> Unlike in *Reetz* [*v Ellis*, 279 Ala 453; 186 So2d 915 (1966)], in which the property owners planned to manage the mobile-home park on site, in this case no mercantile or similar activity occurs at the cabin. The actual renting of the cabin, and any financial transactions associated therewith, occurs off-site. The Slabys [cabin owners] do not solicit renters on-site, but do so through the Internet, where potential tenants can view the premises without actually going there. While occupying the cabin, the tenants must cook and clean for themselves and they do not receive any services from the Slabys. Although the Slabys remit a lodging tax, . . . that fact does not detract from the conclusion that no commercial activity takes place on the premises.
>
> Most importantly, unlike in *Reetz*, the income the Slabys derive from the rental of the property derives solely from the use of the property in the same manner as the other landowners in the subdivision use their properties. The fact that the Slabys receive rental income does not transform the character of the surrounding subdivision like the maintenance of a mobile-home park or a hotel would.

The *Slaby* court concluded that the "commercial use" prohibition did not preclude the Slabys from renting out the cabin on a short-term basis, given that the purposes for which the cabin is used by renters, "such as for eating, sleeping, and other residential purposes, do[] not amount to commercial use." *Slaby*, 100 So3d at 582.

In the instant case, as reflected in the stipulated facts, defendant rents her property through a national website, "which also serves as the medium for payment," and "[t]here is no rental or business office maintained on site, no bed and breakfast service, and no other services provided while renters [are] on site[,] such as housekeeping or linen." Defendant's house is thus merely used by renters for eating, sleeping, and other residential purposes, just like any of the other houses in the subdivision; there are no commercial activities or business operations taking place on site. Once again, it would have been quite simple for the common grantor to have included language expressly barring rentals or mandating that a dwelling be owner-occupied, but this was not done. For the reasons expressed in the caselaw from other states, and taking into

consideration the principles from our jurisprudence that courts will not lightly restrict the free use of property, that restrictions must be clear and expressly provided for in controlling documents, that restrictions are to be strictly construed against a would-be enforcer, and that any doubts are to be resolved in favor of the free use of property, *Conlin*, 313 Mich App at 255-256, I would join those jurisdictions discussed above and hold that language in a restrictive covenant that prohibits making commercial use of a dwelling does not bar short-term rentals of the dwelling in the manner exercised by defendant. Therefore, I would hold that the trial court did not err in ruling in favor of defendant. Accordingly, I respectfully dissent.[8]

/s/ William B. Murphy

---

[8] As a final note, the majority indicates that it is not commenting on long-term rentals of private dwellings. However, I believe that the majority's underlying analysis can effectively be invoked to bar long-term rentals in the context of the language at issue in this case.