This is an appeal by the City of Guntersville from a judgment, after trial ore tenus, denying the city the relief it sought and holding that the present use of certain property in the City of Guntersville constituted neither a violation of the zoning ordinance nor a nuisance. We reverse.
Plaintiff, the City of Guntersville, brought suit against Lamar Williams and Christy Ann Williams, as the owners, and Robert Shull, as the tenant and lessee, of certain real estate located in the City of Guntersville, namely a large house located on a lot on the corner of Scott and Hill Streets in an R-3 zone, according to the Zoning Ordinance, Code and Maps of the City of Guntersville. The city contended the use to which the property is being put constitutes a nuisance and a violation of the zoning ordinances in that the house located thereon is operated as a rooming house or a boarding house. The trial court held, inter alia, that it "is not reasonably satisfied that the present use of the property constitutes either a violation of the zoning ordinance or that such use is a nuisance." The city confesses in brief that it failed to prove the allegations of a nuisance; thus that part of the court's judgment is not an issue on this appeal.
The only issue before us is whether, or not, the use of the dwelling house located on the subject property is either a "Rooming House and/or Boarding House," as such terms are defined by the zoning ordinances of the City of Guntersville, and therefore constitutes a violation of the zoning laws of the City of Guntersville, Alabama. We answer the question in the affirmative and reverse and remand.
It is undisputed that the dwelling house on the subject property, located at the corner of Scott and Hill Streets in the City of Guntersville is located in an "R-3" zone. It is likewise undisputed that the "USES PERMITTED" in an "R-3" zone are "Dwellings and apartments for any number of families." It is also undisputed that the *Page 362 "USES PERMITTED ON APPEAL" in an "R-3" zone are "Clubs, not conducted for profit; rooming and boarding houses." The undisputed evidence is also that there was no "appeal" in this case. According to the zoning ordinances a "BOARDING HOUSE" is "A building other than a hotel, cafe or restaurant where, for compensation, meals are provided for three (3) or more persons" and that a "ROOMING HOUSE" is defined as "Any building or a portion thereof which contains not less than three (3) or more than nine (9) guest rooms which are designed or intended to be used, let, or hired out for occupancy by individuals for compensation whether paid directly or indirectly."
It appears likewise to be undisputed that the dwelling on the subject property called "Shull Apartments" was established by the Marshall-Jackson Mental Health Board as a foster placement facility for former residents of "Hope House" located in Scottsboro, Alabama, with the purpose being to house former patients of Bryce Hospital who no longer qualified to stay at Hope House in Scottsboro. These former patients were placed by the Marshall-Jackson Mental Health Board which is a 100 percent funded program, with 75 percent being from federal funds and 25 percent from state funds. The dwelling on the property in question provides living quarters for these patients and is a duplex type building in which male patients are housed downstairs and female patients upstairs. At the time of trial a total of six former Bryce patients were housed in the structure. It is undisputed that these patients who reside at "Shull Apartments" are in some degree mentally or physically handicapped and are all former patients of Bryce Hospital. It appears from the testimony that the purpose of the operation of "Shull Apartments" is to provide a sort of "halfway" house for former mental patients at Bryce Hospital in an attempt to "get them to integrate back into the community." The Shulls are paid by Bryce Hospital "for services that they render these people." Each of the patients testified but it is not clear from their testimony as to whether Mr. or Mrs. Shull prepared the meals and serve the patients or whether some of the patients prepare their own meals with food bought by the Shulls and brought to them. It does seem clear from the testimony that the patients secure their meals in one of these two ways. Further, the testimony appears to be uncontroverted that Bryce Hospital or the state pays "the Shulls for services that they render these people." Representatives of the Mental Health Department and Bryce Hospital supervise and inspect "Shull Apartments."
Before proceeding to a decision in this case, we think it appropriate to state some well-established rules respecting zoning.
Zoning is an exercise of the police power of a city and is a legislative matter. Come v. Chancey, 289 Ala. 555, 269 So.2d 88
(1972); Haas v. City of Mobile, 289 Ala. 16, 265 So.2d 564
(1972). It is well-established law in Alabama that a zoning ordinance may place upon property owners reasonable restrictions and requirements in the use of the owners zoned property. Haas v. City of Mobile, supra. A municipality may employ injunctions to prevent violations of its zoning ordinances. Rose v. City of Andalusia, 249 Ala. 333,31 So.2d 66 (1947).
Taking the uncontroverted evidence presented by the city (none was presented by the appellees) we think it clear that the use of the dwelling on the subject property constituted a violation of the R-3 residential district in which the property was located since it was not within the "USES PERMITTED:
Dwellings and apartments for any number of families." To the contrary, it appears to be clear from the evidence that it was either a "rooming house" or a "boarding house" which is among the "USES PERMITTED ON APPEAL." The evidence is undisputed that there was no appeal in this case to permit such use. We think that the trial court misapplied the law to the evidence and is due to be reversed because it found that the present use of the property did not violate the zoning ordinances of the City of Guntersville, Alabama. The trial court's decree speaks to the obvious fact that "these people are obviously *Page 363 
dependent and handicapped," that they "need a varying degree of help and assistance," that none of these "people pose any real or present danger to the neighborhood," that in every residential community "there are dependent and handicapped people," who "present no problem," that there is "no evidence that any of these particular people either need or deserve to be restricted," and, that "Every law abiding person has a right to live in and be part of any community. The City Zoning Ordinance of Guntersville cannot be construed to prevent handicapped people from living in a residential area."
This Court certainly has no quarrel with these observations and is in agreement with them. But, we believe that the trial judge has misconceived the issue. The purpose of the city zoning ordinances of Guntersville is certainly not to prevent the handicapped from living in residential areas.
Applying the rules of zoning construction, and the clear and obvious meaning of the "USES PERMITTED" in the R-3 zone it seems clear to us that the dwelling in question was not a dwelling, or apartment, for any number of families, but to the contrary was a "rooming" or "boarding" house, which was a violation of the zoning ordinance of the City of Guntersville.
It is therefore that this cause must be reversed and remanded to the trial court for the entry of a decree in conformity herewith.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.