This is an appeal from a Madison County Circuit Court decision that two group homes for mentally disabled adults were not permissible under the applicable zoning ordinance.
The case was submitted upon stipulated facts. At issue is the location of two residential programs for developmentally disabled citizens, designed to provide a family-like setting for the residents, in a neighborhood zoned for family-only occupancy.
Residents will participate in some day programs aimed at teaching the residents the skills needed to live successfully in the community. Training will be "informal and formal as required," with concentration on living and social skills.
Two duplexes have been built specifically for this purpose by Civitans Care, Inc., a non-profit organization. The duplexes are designed to house residential managers on one side and six developmentally disabled adults on the other side. One duplex will provide a home for women, and the other for men.
Civitans Care, Inc., leased the two buildings to Huntsville Group Homes, Inc., a non-profit corporation which provides handicapped and mentally retarded persons with housing and services for their needs. Huntsville Group Homes, Inc., will receive funding from the Alabama Department of Mental Health for these group homes. Residents in the homes will contribute their share of costs to the extent possible, but no one will be denied entrance if he cannot pay.
Meals are to be provided to the residents. In most part these meals will be cooked by a staff with help from the residents.
After a six-week trial period, occupancy by a resident is to be permanent, with the home considered as his only residence. Residents may leave when the program can no longer benefit them, or because they are able to live in a less restrictive environment.
The Board of Adjustment of Huntsville denied the request of Civitans Care, Inc., to interpret the zoning ordinance to find such homes do not violate the family-only restriction, and denied the alternative request for a variance. On appeal from the Board *Page 542 
of Adjustment, the circuit court also denied the request of Civitans for both a favorable interpretation or a variance. From this, Civitans Care, Inc., appeals, and we affirm. The denial of the variance was not appealed and is not an issue.
In his final judgment, the learned trial judge stated that, based on City of Guntersville v. Shull, 355 So.2d 361 (Ala. 1978), he must hold the group homes were either rooming or boarding houses and not permissible uses within a family-only zone. The trial judge noted that but for Shull he "would be inclined to rule in plaintiff's [Civitans Care, Inc.] favor," because the broad definition of family in the Huntsville zoning ordinance "arguably encompasses" the group homes situation. We are equally impressed that the decision in Shull appears dispositive of this case.
Appellant and amicus, both of whom have provided this court with excellent briefs for which we are grateful, argue thatShull is distinguishable, and not controlling in that Shull was decided without reference to any definition of "family." The appellant also points out that Shull was decided without brief from the owners of the halfway house, and that the halfway house in Shull was of a different character.
However, Shull did determine that the halfway house in question was a boarding or rooming house under definitions quite similar to those in the Huntsville ordinance. Whether or not Shull is conclusively binding authority on the facts in the instant case or not, we deem it persuasive guidance from our supreme court.
The dispositive issue in the instant case is a narrow one. Are the proposed group homes a permissible use under the governing Huntsville ordinances? More specifically, does the written definition of "family" in the ordinances encompass the situation of these group homes, or does the definition of rooming or boarding house encompass these group homes? WhileShull may not answer the question concerning "family," it may answer the question as to boarding or rooming houses.
As stated, the dispositive issue in this case concerns an interpretation of the Huntsville ordinances. The area in which the group homes have been built and hope to operate are zoned for a detached residence occupied by one family, or residence occupied by two families with separate housekeeping and cooking facilities for each. The ordinance defines families as: "Any number of individuals living together as a single housekeeping unit and doing their own cooking on the premises." Huntsville City Ordinance § 7.1.21.
The ordinances define a boarding house as "a building other than hotel, cafe, or restaurant where, for compensation, meals are provided for three or more persons." § 7.1.8.
A rooming house is defined as "any building or portion thereof which contains not less than three, or more than nine guest rooms which are used, or let, for occupancy by individuals for compensation paid directly or indirectly." § 7.1.37.
At the onset, we note that construction of a zoning ordinance is a question of law. Burnham v. City of Mobile, 277 Ala. 659,174 So.2d 301 (1965). Statutes or ordinances which impose restrictions on the use of private property are strictly construed and their scope cannot be extended to include limitations not therein included or prescribed. Smith v. Cityof Mobile, 374 So.2d 305 (Ala. 1979); Robertson v. WesternBaptist Hospital, 267 S.W.2d 395 (Ky.App. 1954).
We acknowledge there is a split of authority among the states as to the proper classification of group homes under zoning ordinances.[1] See Annot., 71 A.L.R.3d 697 (1976); 100 A.L.R.3d 876 (1980). *Page 543 
In Shull, the Alabama Supreme Court held that a halfway house for former mental patients was a rooming or boarding house, and not permissible use in a single family and multi-family dwelling zone.
In deciding Shull, the court interpreted the applicable Guntersville zoning ordinances. The case dealt with a halfway house designed to ease released mental patients back into the community. One of the factors discussed by our supreme court inShull concerned compensation to the operators of the home. The operators of Shull house were paid for their services to the residents. In the instant case, the owners and operators of the group homes, although non-profit corporations, will receive compensation to support the program. Some monies will be state funds, some will come directly from the residents. The applicable Huntsville ordinance speaks of "compensation paid directly or indirectly." § 7.1.37.
Another factor considered in Shull is the preparation and serving of meals to the residents, which the court in Shull
said was evidence the home was a boarding house. In the instant case, the contract requires that the operators provide the residents with meals. The applicable Huntsville ordinance speaks of a boarding home as a place where "for compensation meals are provided for three or more persons." § 7.1.8.
We therefore find that the proposed group homes are either "boarding" or "rooming" houses, and as such the residents are logically precluded from constituting a single family.
Although there is authority to the contrary,[2] there are also cases which support the result reached in this case. SeePenobscot Area Housing Development Corp. v. Brewer, 434 A.2d 14
(Me. 1981), holding that lack of permanency of residents, lack of control over who residents would be and lack of permanent authority figure made a group home more like a boarding house, and not like a family home; Carroll v. Washington TownshipZoning Commission, 63 Ohio St.2d 249, 408 N.E.2d 191 (Ohio 1980), holding that where residents stayed only six months to one year they did not fall within the definition of a family;Wengert v. Zoning Board of Upper Merion Township, 51 Pa. Commw. 79,414 A.2d 148 (Pa. 1980), holding that where the court committed children to a group home in lieu of commitment to an institution, residents of group were not a family; St. LukeEvangelical Lutheran Church v. Zoning Hearing Board,43 Pa. Commw. 159, 403 A.2d 128 (Pa.Commw. 1979), in dicta, in footnote 1, the court said compensation received for residents was a factor in deciding group home residents were not a family; and Browndale International, Ltd. v. Board ofAdjustment for County of Dane, 60 Wis.2d 182, 208 N.W.2d 121,cert. denied, 416 U.S. 936, 94 S.Ct. 1933, 40 L.Ed.2d 286
(1973), holding that where a group home for mentally disturbed children was run for commercial reasons, residents were not a family.
In addition, Civitans Care, Inc., contends state policy promoting deinstitutionalization should pre-empt local ordinances which exclude group homes. This contention appears to assume group homes are prohibited throughout Huntsville, and this *Page 544 
is not the case. Furthermore, a state policy favoring establishment of group homes, assuming Alabama has such a policy without so finding, does not necessarily preempt reasonable local zoning regulations. Courts have upheld local ordinances which do not totally prohibit the establishment of group homes but require only that a facility conform to reasonable criteria. See, e.g., People v. Renaissance Project,36 N.Y.2d 65, 68, 364 N.Y.S.2d 885, 324 N.E.2d 355 (1975). In light of the apparent facts that these group homes may presumably locate in other areas in Huntsville and that the zoning restrictions at issue are reasonable, we fail to see why the zoning regulations should be pre-empted.
In view of the above, we affirm the lower court's holding that the proposed group homes were either boarding or rooming houses.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] Several recent law review articles are concerned with this issue. Interested parties might wish to read Boyd, "Strategies in Zoning and Community Living Arrangements for Retarded Persons: Parens Patriae Meets Police Power," 25 Vill.L.Rev. 273 (1980); Note, "Group House of Port Washington v. Board ofZoning and Appeals: Encroachment of Community Residences Into Single Family Districts," 43 Alb.L.Rev. 539 (1979); Lippincott, "A Sanctuary For People: Strategies for Overcoming Zoning Restrictions on Community Homes for Retarded Persons," 32 Stan.L.Rev. 767 (1979); "Zoning for the Mentally Ill: A Legislative Mandate," 16 Harv.J. on Legislation 853 (1979). We might also refer interested parties to R. Anderson, AmericanLaw of Zoning, 2d ed. (1977) § 16.05, § 9.29, § 9.32; and to B. Gailey, Group Homes and Single Family Zoning, 1982 Zoning and Planning Law Handbook 159.
[2] See Oliver v. Zoning Commission of Town of Chester,31 Conn. Sup. 197, 326 A.2d 841 (1974), holding a group home for mentally retarded adults was not a boarding or rooming house because the residents operated as a single housekeeping unit;City of West Monroe v. Ouachita Association for RetardedChildren, 402 So.2d 259 (La.App. 1981), holding a group home for mentally retarded adults was definitely not a boarding or rooming house; Linn County v. City of Hiawatha, 311 N.W.2d 95
(Iowa 1981), holding the preparation of food predominantly by the operators of a group home did not alter the essential character of the group as a family, and did not make the home a boarding house. See also cases cited in 100 A.L.R.3d 876 and 71 A.L.R.3d 693.