Rel: October 3, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2025-0020

_____

**Campus Crest at Tuscaloosa LLC; BVSHSSF Tuscaloosa LLC; CTC POV Associates LLC; Core Tuscaloosa 519-613 Red Drew; CREI-Tuscaloosa LLC; Jefferson Loft LLC; The Walk LeaseCo LLC; Riverfront Village SH, LLC; Woodlands of Tuscaloosa LLC; SSC Keller Apartments LLC; SSC Tuscaloosa Apartments LLC; Vesper Tuscaloosa LLC; University House Tuscaloosa LLC; and University Downs Funding Company**

**v.**

### City of Tuscaloosa

**Appeal from Tuscaloosa Circuit Court**
**(CV-24-900478)**

SELLERS, Justice.[1]

Fourteen taxpayers,[2] who allege to be out-of-state owners, operators, or lessees of multifamily housing developments in the City of Tuscaloosa ("the City"), appeal from a judgment of the Tuscaloosa Circuit Court ("the trial court") dismissing their action against the City,[3] in which the taxpayers challenged the constitutionality of City Ordinance No. 9112 ("the Ordinance") concerning business-license fees. We affirm in part, reverse in part, and remand.

## I. Facts

Because this appeal concerns a motion to dismiss under Rule 12(b)(6), Ala. R. Civ. P., the facts in the complaint constitute the only

---

[1]This case was originally assigned to another Justice on the Court; it was reassigned to Justice Sellers.

[2]The taxpayers are Campus Crest at Tuscaloosa LLC; BVSHSSF Tuscaloosa LLC; CTC POV Associates LLC; Core Tuscaloosa 519-613 Red Drew; CREI-Tuscaloosa LLC; Jefferson Loft LLC; The Walk LeaseCo LLC; Riverfront Village SH, LLC; Woodlands of Tuscaloosa LLC; SSC Keller Apartments LLC; SSC Tuscaloosa Apartments LLC; Vesper Tuscaloosa LLC; University House Tuscaloosa LLC; and University Downs Funding Company.

[3]The complaint originally named as other defendants certain City officials, in their official capacities; however, those defendants were dismissed and are, therefore, not parties to this appeal.

operative facts for our review: The multifamily housing developments that the taxpayers own, operate, or lease in the City have been designated by the City, through its zoning officer, as student-oriented housing developments ("SOHDs"). Section 24-5 of the Code of Tuscaloosa ("the Code") defines an SOHD as

> "[a] building, not owned or operated by a college or university, which contains bedrooms <u>for students attending a college or university</u>. This building is a multifamily structure consisting of bedrooms with private bathrooms, individually rented, and arranged around a common area with a kitchen shared by tenants renting the bedrooms, or along a hall, which provides access to a common kitchen space shall be considered a student-oriented housing development. <u>The listed defining characteristics are not exhaustive, nor does the absence of one or more of the defining characteristics preclude a finding that the development is a student-oriented housing development.</u>"

(Emphasis added.) Section 24-5 also provides a list of other factors that may be considered in determining whether a housing development will be designated as an SOHD, which include, but are not limited to, the interior layout of the development, the location of the development and its proximity to a college or university, the development company's portfolio, the marketing and branding of the development, the amenities provided in the development, and the furnishings provided in the units.

3

Section 7-61 of the Code requires a person or entity in the business of renting or leasing real property to pay a business-license fee in the amount of 1% of rents received. In September 2021, the City adopted the Ordinance, which amended Section 7-61, to provide that, beginning April 1, 2022, SOHDs with more than 200 bedrooms would pay a business-license fee in the amount of 3% of rents received. The Ordinance found that, "[b]ecause of their population density and typical proximity to other densely-populated and highly-developed areas, SOHDs [i]mpose [i]ncreased burdens on the City's [i]nfrastructure and have required and may in the future require a disproportionate provision of public services to maintain public health and safety."

In May 2024, the taxpayers commenced an action against the City, seeking a judgment declaring that the Ordinance was invalid and that they were entitled to a refund of taxes collected under the Ordinance. The taxpayers challenged the Ordinance on due-process, equal-protection, and dormant-Commerce Clause grounds. The taxpayers also alleged that the Ordinance was essentially a zoning ordinance and that the City had adopted it without complying with the mandatory notice requirements set forth in Ala. Code 1975, § 11-52-77. Following a

4

hearing, the trial court granted the City's motion to dismiss, pursuant to Rule 12(b)(6). In this appeal, we address whether the taxpayers have alleged sufficient facts to withstand a dismissal of the claims alleged in their complaint.

## II. Standard of Review

"On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So. 2d 928, 930 (Ala. 1981); Allen v. Johnny Baker Hauling, Inc., 545 So. 2d 771, 772 (Ala. Civ. App. 1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So. 2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So. 2d 746 (Ala. Civ. App. 1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [the plaintiff] may possibly prevail. Fontenot v. Bramlett, 470 So. 2d 669, 671 (Ala. 1985); Rice v. United Ins. Co. of America, 465 So. 2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So. 2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So. 2d 768, 769 (Ala. 1986)."

Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993). See also Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin, 294 Ala. 201, 211, 314 So. 2d 663, 672 (1975) (noting that pleadings are required to give

5

notice and are not required to precisely plead every fact necessary to entitle the pleader to relief).

### III. Discussion

### A. Equal-Protection Claim

The taxpayers argue that they have stated a claim under the Equal-Protection Clause of the United States Constitution based on the Ordinance's taxing scheme, which, they allege, is arbitrary and bears no relationship to any legitimate municipal purpose. The appropriate standard of review for equal-protection challenges, when neither a suspect class nor a fundamental right is involved, is the rational-basis test. See Gideon v. Alabama State Ethics Comm'n, 379 So. 2d 570, 573-74 (Ala. 1980). "Under the rational basis test the Court asks: (a) Whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose." Id. at 574. The actual motivations of the government in enacting a statute, or in this case the Ordinance, are irrelevant, and the party attacking the constitutionality thereof has "the burden of negating every conceivable or reasonable basis that might support" its constitutionality. Northington

6

v. Alabama Dep't of Conservation & Nat. Res., 33 So. 3d 560, 564 (Ala. 2009).

The taxpayers concede that the Ordinance is presumed valid and that they have the burden of proof to negate every conceivable rational basis that might support its constitutionality. However, the taxpayers argue that they were not required to list and negate every conceivable rational basis for the Ordinance on the face of the complaint. See Wroblewski v. City of Washburn, 965 F.2d 452, 459-60 (7th Cir. 1992) (noting that the federal Rule 12(b)(6) standard is "procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim"); Thorn v. Jefferson Cnty., 375 So. 2d 780, 787 (Ala. 1979) ("In order to sustain the grant of the motions to dismiss, we would have to take judicial notice that the Legislature had a rational basis upon which to base its classification in this statute. This we cannot do. The taxpayers have alleged that the classification is arbitrary and capricious. They have the burden to prove this, but they are at least entitled to have their day in court."); and Metropolitan Life Ins. Co. v. Forrester, 437 So.

7

2d 535, 540 (Ala. Civ. App. 1983) ("Contrasting the burden of proof placed upon the constitutional challengers of a statute to that upon the party moving for summary judgment results in a conflict of the burdens of proof which is difficult to resolve. It is the opinion of the court that the presumption of constitutionality afforded legislative enactments was not intended to prevent the full factual development of the challenge of the rationality of the action of the legislature in pursuing its stated or conceivable purpose."). In relevant part, the complaint alleges:

> "17. In an interview during passage of the Ordinance, [City-council member Lee Busby] stated that 'large out-of-state developers' were the primary owners and operators of 'student-oriented' complexes, i.e., those with over 200 bedrooms.
>
> "....
>
> "38. [The taxpayers] are out-of-state, foreign property owners who have been unfairly singled out for such unequal and discriminatory treatment and assessments on their property far in excess of in-state property owners, all in violation of the Equal Protection clause of the United States and Alabama Constitutions.
>
> "39. The Ordinance also discriminates against [the taxpayers] and subjects their property to a classification scheme based upon arbitrary guidelines, such as having over 200 bedrooms, and subjects their property to unequal tax at triple the rate of other, similarly-situated properties which are not so classified.

"40. Multifamily facilities that are purportedly characterized by the Ordinance as [SOHDs], but have between 1-200 bedrooms, are subject only to a 1% business license fee. But for developments that have 201 or more bedrooms, the taxes are inexplicably tripled under the Ordinance.

"41. Multifamily developments of any size, even those with over 200 bedrooms, are subject to only a 1% business license fee if not deemed 'student-oriented.' Large apartment complexes which may have historically consumed a disproportionate number of public services or contributed to safety and security issues in the Tuscaloosa community, are also only required to pay a 1% rental tax.

"42. The Ordinance, on its face and as applied, is unreasonable, unnecessary, and arbitrary. [The City] has no legitimate or substantial interest in singling out, regulating, and infringing on out-of-state property owners whose [SOHDs] contain 200 or more bedrooms, while exempting all other owners of multifamily developments from the treble tax.

"43. The Ordinance, as applied, unlawfully discriminates against out-of-state development owners. Indeed, the otherwise arbitrary 200-bed threshold has the effect of ensuring that only out-of-state companies or their subsidiaries are subjected to treble taxation."

The complaint contains sufficient factual averments that, if developed, could show that the City had no rational basis for drawing the line of demarcation at 201 bedrooms and tripling the business-license fee on foreign entities that own, operate, or lease housing developments that have been designated as SOHDs. Specifically, the complaint highlights

that the City, in adopting the Ordinance, decided that an SOHD with more than 200 bedrooms requires more public services than a similarly situated housing development with just as many bedrooms that is utilized primarily by nonstudents. Thus, dismissing the taxpayers' equal-protection claim before discovery has occurred, and with very little factual development, was erroneous.

### B. Due-Process Claim

The taxpayers argue that they have stated a due-process claim based on their allegations that the Ordinance is unconstitutionally vague. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). To challenge an ordinance for vagueness, the challenger must fall within the group of persons affected or possibly affected by the ordinance. See Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n, 294 Ala.

173, 178, 314 So. 2d 51, 56 (1975) ("Where a particular litigant is not within the group of persons affected by a statute or portion thereof which is allegedly unconstitutional, such litigant lacks standing to raise such constitutional issue."), and Kid's Stuff Learning Ctr., Inc. v. State Dep't of Human Res., 660 So. 2d 613, 620 (Ala. Civ. App. 1995) ("One who challenges a regulation as being unconstitutionally vague or overbroad must be directly affected by the [regulation's] alleged vagueness."). Here, the complaint alleges, in relevant part:

"29. Section 24-5 of the [Code] further states that its definition is 'not exhaustive' and the 'absence of one or more of the defining characteristics [does not] preclude a finding that the development is [an SOHD].

"30. Further 'determining factors' of [SOHDs] include the interior layout of the development, the location of the development and proximity to a college or university, the 'company portfolio,' the marketing and branding of the development, the amenities provided, and what furnishings are provided. This list, too, is non-exhaustive, and there is no definitive standard or guideline offered by which to apply or weigh these factors. Id.

"31. Nothing in the Ordinance, for instance, requires a conclusive determination that any or all of the occupants of a multifamily facility are actually students at a college or university. Hypothetically, few of the lessees of the alleged [SOHDs] could actually attend a college or university, but as long as [City] zoning officials deem the development to be student-oriented housing, the 3% business license fee would still be imposed.

11

"32. The Ordinance, through its incorporation of § 24-5 [of the Code], merely provides a list of suggested features that [an SOHD] may or may not actually have, and the presence or absence of any or all of the enumerated factors are not dispositive of the status of a property as [an SOHD]. The Ordinance thus 'fails to afford a person of ordinary intelligence a reasonable opportunity' to understand what is subject to the tax. Scott & Scott, Inc. v. City of Mountain Brook, 844 So. 2d 577, 589 (Ala. 2002).

"33. The vague guidelines provided by the Ordinance on their face and as applied, lend themselves to arbitrary, overbroad, and unequal application by officials of [the City] charged with enforcement of Section 7-61.

"34. Because the Ordinance does not provide any meaningful standard and allots unfettered discretion to [the City's] zoning officers to determine under ambiguous guidelines whether or not the treble tax rate will apply, it is so vague and overbroad as to deprive [the taxpayers] of due process under the Fifth and Fourteenth Amendments to the United States Constitution, and under Article I, § 13 of the Alabama Constitution.

"35. Further, because there is neither a meaningful opportunity to be heard before a determination is made that a property qualifies as [an SOHD], nor a truly independent review before an impartial third party, the Ordinance deprives [the taxpayers] of due process."

As previously indicated, the Ordinance incorporates by reference Section 24-5 of the Code, which defines SOHDs and provides a nonexhaustive list of "defining characteristics" and other factors to be considered by the City's zoning officer in determining whether a housing

12

development will be designated as an SOHD and, thus, subject to treble taxation. Here, the allegations of the complaint are not merely conclusory. Rather, the complaint alleges, among other things, that the characteristics or factors used by the zoning officer to determine whether a housing development receives an SOHD designation are vague, that the zoning officer has unfettered discretion in applying those characteristics or factors, and that the Ordinance fails to afford a person of ordinary intelligence a reasonable opportunity to understand which characteristics or factors caused a housing development to be designated as an SOHD. The taxpayers assert that, despite the arbitrary characteristics and factors, the unfettered discretion given to the zoning officer in applying those characteristics or factors, they have paid the 3% business-license fee and, therefore, have standing to bring this suit to challenge the vagueness of the Ordinance.[4] We agree. It is clear that the

_____

[4]The City claims that the taxpayers lack standing to challenge the Ordinance on due-process grounds, presumably because the taxpayers failed to file an appeal with the City's Zoning Board of Adjustment challenging the designation of their housing developments as SOHDs; thus, the City says, the taxpayers lack any concrete injury resulting from the designation of their housing developments as SOHDs. The Ordinance, however, does not require such an appeal. Rather, it states that "[a]ny licensee aggrieved by the Zoning Officer's determinations may appeal said determination to the Zoning Board of Adjustment …."

taxpayers' housing developments have been designated as SOHDs and, thus, are subject to the Ordinance's treble-taxation requirement. Moreover, the allegations of the complaint, when accepted as true, do not foreclose the taxpayers' ability to prove that the Ordinance is void for vagueness. See Ex parte Haralson, 853 So. 2d 928, 931 (Ala. 2003) ("We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff.").

## C. Dormant-Commerce Clause Claim

The taxpayers argue that they have stated a dormant-Commerce Clause claim based on their allegations that the Ordinance discriminates against out-of-state entities that are in the business of leasing multifamily housing developments with more than 200 bedrooms and subjects those entities to the payment of a higher tax than that paid by

---

(Emphasis added.)  See City of Bessemer v. McClain, 957 So. 2d 1061, 1069 (Ala. 2006) ("A party challenging the construction given a statute is raising a question of law. An administrative agency would be without authority to make a determinative ruling on such a statutory challenge. When the administrative body is without power to redress the complained-of harm, the complaining party is not required to engage in what would be a futile process."). Accordingly, the taxpayers were not required to file an appeal with the City's Zoning Board of Adjustment challenging the designation of their housing developments as SOHDs before seeking declaratory relief based on Ordinance's alleged vagueness.

in-state entities operating similarly situated multifamily housing developments. The Commerce Clause gives Congress the power to regulate commerce among the states. See United States Const. art. I, § 8., cl. 3. It not only includes an affirmative authorization for Congress to regulate interstate commerce, but also includes a corresponding restraint on the power of state governments or municipalities to regulate that commerce. See Department of Revenue of Ky. v. Davis, 553 U.S. 328, 337-38 (2008). That restraint is referred to as the dormant Commerce Clause. Id. In Brown-Forman Distillers Corp. v. New York State Liquor Authority, 476 U.S. 573, 578-79 (1986), the United States Supreme Court explained the two-tiered approach to analyzing state or local regulation under the dormant Commerce Clause:

> "This Court has adopted what amounts to a two-tiered approach to analyzing state economic regulation under the Commerce Clause. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. See, e.g., Philadelphia v. New Jersey, 437 U.S. 617 (1978); Shafer v. Farmers Grain Co., 268 U.S. 189 (1925); Edgar v. MITE Corp., 457 U.S. 624, 640-643 (1982) (plurality opinion). When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. Pike v. Bruce Church, Inc., 397 U.S.

137, 142 (1970). We have also recognized that there is no clear line separating the category of state regulation that is virtually per se invalid under the Commerce Clause, and the category subject to the Pike v. Bruce Church balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity."

See also National Pork Producers Council v. Ross, 598 U.S. 356, 364 (2023) ("Assuredly, under this Court's dormant Commerce Clause decisions, no State may use its laws to discriminate purposefully against out-of-state economic interests."); South Dakota v. Wayfair, Inc., 585 U.S. 162, 173 (2018) ("First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce."); and New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273 (1988) (noting that the " 'negative' aspect of the Commerce Clause prohibits economic protectionism -- that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors").

Here, the taxpayers allege, in relevant part:

"17.  In an interview during passage of the Ordinance, [City-council member Lee Busby] stated that 'large out-of-state-developers' were the primary owners and operators of 'student-oriented' complexes, i.e., those with over 200 bedrooms.

16

"....

"19. The Ordinance, as codified at § 7-61, provides that all other multifamily lessors of real property [not designated as SOHDs] must remit only one percent (1%) of their gross rents received as a business license fee, regardless of the number of bedrooms, proximity to other highly-developed areas, or degree of need for public services.

"....

"24. On its face, the Ordinance does not facially discriminate against foreign owners, but as noted by the Council, the only properties in [the City] required to pay tax under the treble taxation [Ordinance] are, in fact, owned by out-of-state companies or subsidiaries of out-of-state companies.

"....

"38. [The taxpayers] are out-of-state, foreign property owners who have been unfairly singled out for such unequal and discriminatory treatment on their property far in excess of in-state property owners ….

"....

"45. The Ordinance was passed with an impermissible protectionist purpose and otherwise is in violation of the [d]ormant Commerce Clause of the United States Constitution."

The taxpayers appear to argue that they have alleged a dormant-Commerce Clause claim requiring the first tier of scrutiny because, they say, an Ordinance that is "facially neutral and purports to regulate

17

evenhandedly can still be subject to strict scrutiny if its practical effect is to discriminate against interstate commerce." Taxpayers' brief at 38. See Government Suppliers Consolidating Servs., Inc. v. Bayh, 975 F.2d 1267, 1278 (7th Cir. 1992) (noting that "a determination that a statute does not discriminate on its face and 'purports to regulate evenhandedly' does not end the question of which scrutiny should apply"). The taxpayers posit that, although the Ordinance nominally applies to in-state owners of large housing developments, the only entities actually paying the treble tax are out-of-state entities, whether because the zoning officer has not applied the SOHD designation to housing developments owned, operated, or leased by in-state entities or because there are no developments with over 200 bedrooms owned, operated, or leased by in-state entities. Thus, they say, the practical effect of the Ordinance is "to protect mom and pop hometown landlords by increasing the cost of doing business on large foreign ownership through treble taxation." Taxpayers' brief at 40. See Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 574 (1997) ("A tax on real estate, like any other tax, may impermissibly burden interstate commerce."), and Family Winemakers of Cal. v. Jenkins, 592 F.3d 1, 10 (1st Cir. 2010) ("A state law is discriminatory in

18

effect when, in practice, it affects similarly situated entities in a market by imposing disproportionate burdens on out-of-state interests and conferring advantages upon in-state interests."). Here, the allegation in the complaint that the Ordinance unconstitutionally discriminates against out-of-state interests in favor of in-state economic interests alleges a classic violation of the dormant Commerce Clause. See Brown-Forman Distillers, 476 U.S. at 579 (noting that, when the effect of a state statute "is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry"). Accordingly, accepting the allegations of the complaint as true, we conclude that the taxpayers have alleged a dormant-Commerce Clause claim sufficient to survive the City's motion to dismiss. Nance, supra.

## D. Zoning-Ordinance Claim

The taxpayers finally claim that they have stated a claim asserting a violation of Ala. Code 1975, § 11-52-77, based on their allegations that the Ordinance is effectively a zoning ordinance and that the City failed to strictly adhere to the notice and hearing requirements of § 11-52-77 before adopting the Ordinance. See Kennon & Assocs., Inc. v. Gentry, 492 So. 2d 312, 315 (Ala. 1986) (holding that the procedural steps for

19

adopting or amending a zoning ordinance, especially notice requirements, must be strictly followed).  In relevant part, the complaint specifically alleges that, in 1962, the City established a planning commission that was authorized to act as the city zoning commission, that the definition of an SOHD is contained in the zoning portion of the Code, that the City's zoning officer determines which properties are designated as SOHDs, and that such determinations by the zoning officer may be appealed to the City's Zoning Board of Adjustment.  The complaint further alleges that, before adopting the Ordinance, the City was required by § 11-52-77 to publish notice of its proposal and to hold a hearing for interested parties to be heard. The complaint finally alleges that the provisions of § 11-52-77 relative to hearings and official notice apply equally to amendments related to planning and zoning pursuant to § 11-52-78, Ala. Code 1975. According to the taxpayers, the administration of the tax scheme contained in the Ordinance is so intertwined with zoning matters that the City should not be heard to argue otherwise. Despite the allegations of the complaint, the business-license fee imposed by the Ordinance does not seek to impose restrictions or regulate the use of the taxpayers' property in the same manner as

zoning laws. See City of Guntersville v. Shull, 355 So. 2d 361, 362 (Ala. 1978) (noting that it is well established that a zoning ordinance may impose upon a property owner reasonable restrictions and requirements in the use of zoned property), and Roberson v. City of Montgomery, 285 Ala. 421, 425, 233 So. 2d 69, 72 (1970) (" 'Zoning" is primarily concerned with the regulation of the use of property, to structural and architectural designs of buildings, and the character of use to which the property or the buildings within classified or designed districts may be put."). Based upon the characterization and definition of zoning as articulated in Shull and Roberson, we conclude that the taxpayers' complaint does not sufficiently allege that the Ordinance falls within the scope of the City's zoning regulations, which would be subject to the notice requirements of § 11-52-77. Thus, the trial court properly dismissed the taxpayers' claim alleging that the Ordinance is effectively a zoning ordinance.

## IV.  Conclusion

We conclude that, under the standard of review for motions to dismiss under Rule 12(b)(6), the dismissal of the taxpayers' claim alleging that the Ordinance was essentially a zoning ordinance subject to the notice requirements of § 11-52-77 was properly dismissed for failure

to state a claim upon which relief could be granted. Nance, supra. However, the dismissal of the equal-protection, due-process, and dormant-Commerce Clause claims was premature and in error. See Ex parte Mobile Infirmary Ass'n, 349 So. 3d 842, 847 (Ala. 2021) ("We emphasize that, at this stage of the proceedings, the applicable standard of review required the trial court and requires this Court to view [the taxpayers'] allegations most strongly in [their] favor and to consider only whether [they] might possibly prevail if [they] can prove [their] allegations. See Ex parte Abbott Lab'ys, 342 So. 3d [186,] 194 [(Ala. 2021)]. The issue before us is not one of proof; rather, the issue is whether the action can be maintained if [the taxpayers'] allegations are true. See id."). Because at this juncture in the proceedings no discovery has occurred and the taxpayers have not factually developed their case, we can review only the complaint, and, in doing so, we find that the allegations therein regarding the equal-protection, due-process, and dormant-Commerce Clause claims were sufficiently pleaded, thus leading us to conclude that there is a possible, factual basis upon which relief could be granted on those claims. We therefore reverse the trial

22

court's judgment dismissing those claims against the City and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Bryan, Mendheim, McCool, and Lewis, JJ., concur.

Cook, J., concurs in part and dissents in part, with opinion, which Wise, J., joins.

Shaw, J., concurs in the result in part and dissents in part, with opinion, which Stewart, C.J., joins.

COOK, Justice (concurring in part and dissenting in part).

I concur with the majority of this well-written opinion. However, there is one aspect of our Court's decision today with which I disagree, and I must therefore dissent in part.

I disagree with the main opinion's conclusion that the taxpayers have adequately alleged their due-process claim. That claim rests on their assertions that the City of Tuscaloosa's Ordinance No. 9112 is unconstitutionally vague. Our caselaw establishes a high bar for such a claim. For instance, our Court has previously explained:

> "'"'Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced.'" The judicial power to declare a statute void for vagueness "should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of the known and accepted rules of construction, to determine with any reasonable degree of certainty, what the legislature intended."'"

Board of Water & Sewer Comm'rs of City of Mobile v. Hunter, 956 So. 2d 403, 420 (Ala. 2006) (quoting Vaughn v. State, 880 So. 2d 1178, 1195-96 (Ala. Crim. App. 2003)). I do not believe the complaint meets this standard. Therefore, I would dismiss this claim on the merits. Moreover, although I need not reach the question, I also have serious doubts about

whether the taxpayers have standing to assert such a claim. It is for these reasons that I respectfully dissent.

Wise, J., concurs.

SHAW, Justice (concurring in the result in part and dissenting in part).

I would affirm the Tuscaloosa Circuit Court's judgment in full.

Stewart, C.J., concurs.